ALONZO R. HILL

*v.*

MARY A. MONTGOMERY.

*Opinion filed February 19, 1900.*

1. TRIAL—*it is proper to confine cross-examination to matters called out in chief.* Plaintiff in an action for damages to good name and reputation, who has not given any evidence of her character upon her examination in chief, cannot be cross-examined for the purpose of proving her bad character, although evidence of such fact, if properly offered, would be admissible in mitigation of damages.

2. SAME—*when remarks by court in excluding witness' answer are not ground for reversal.* It is the right of the trial court to see that the answers given by witnesses are responsive to the questions asked and to prevent the bringing in of irrelevant matters, and the fact that in excluding an unresponsive answer the court styles it "stuff" and "trash" does not necessarily require a reversal of the judgment.

3. EVIDENCE—*when testimony of witness may be disregarded.* Where the general reputation of a witness for truth and veracity is bad in the neighborhood where he resides, or he has knowingly sworn falsely to a material matter, the jury may disregard his uncorroborated testimony.

4. APPEALS AND ERRORS—*when application for new trial will be presumed to have been abandoned.* An application for new trial upon the ground of newly discovered evidence will be presumed, on appeal, to have been abandoned, where the ruling upon that branch of the case is not questioned in appellant's brief and argument.

*Hill* v. *Montgomery,* 84 Ill. App. 300, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

SALMANS & DRAPER, for appellant.

DYER & WALLBRIDGE, and GEORGE T. BUCKINGHAM, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

At the May term, 1895, of the circuit court of Vermilion county one John Montgomery was convicted of grand larceny and sentenced to the penitentiary. Mary A. Montgomery, his wife, the appellee, employed appellant, a practicing attorney at the Vermilion county bar, to obtain for her a divorce from Montgomery on the ground that he had been convicted of a felony. On September 15, 1896, Hill filed a bill on her behalf for divorce. Summons was issued and served on Montgomery, and at the October term, 1896, a default was entered against him. At the October term, 1896, the cause was continued for evidence, and at the January term, 1897, was dismissed for want of prosecution, at the cost of complainant therein. On January 5, 1899, Mary A. Montgomery brought suit against appellant, Hill, for $10,000 damages, claiming that he had willfully, maliciously, fraudulently and falsely represented to her that she had been granted a

divorce from Montgomery, and, acting under such rep-
resentations and believing them to be true, she entered
into marriage with one John Hampton, and continued to
live with Hampton as his wife until December 30, 1898,
when she learned that she had not been divorced from
Montgomery, whereby her good name and reputation
were damaged and she was brought into public scandal
and disgrace. Defendant pleaded the general issue. The
cause was tried by a jury, resulting in a verdict of guilty
and fixing appellee's damages at $5000. On appeal the
judgment was affirmed in the Appellate Court.

The facts in the case have been settled adversely to
appellant by the judgment of the Appellate Court, and
that judgment, as to controverted facts, must be regarded
as final on this appeal. It therefore only remains to be
determined whether the circuit court erred, on the trial,
in its ruling on questions of law.

In the argument of counsel for the appellant three
grounds are relied upon to reverse the judgment: First,
the court erred in refusing to admit certain evidence of-
fered by the appellant; second, the court made improper
remarks in the hearing of the jury during the progress
of the trial; and third, the court gave improper instruc-
tions on behalf of the plaintiff.

Under the first point relied upon, on the cross-exami-
nation of the plaintiff appellant undertook to prove by
her that she first became acquainted with John Hampton,
the person to whom she was married, in a house of pros-
titution in the city of Danville. The object of this evi-
dence was to prove that the character of the plaintiff for
chastity was bad. It may be conceded that in an action
of this kind, brought to recover damages sustained by
the plaintiff to her good name and character, it was com-
petent, in mitigation of damages, to prove the character
of the plaintiff, and if appellant had offered competent
evidence to establish that fact it might have been ad-
mitted. But appellant undertook to make proof of bad

character on cross-examination of the plaintiff, and the court held that the evidence thus offered was incompetent on cross-examination. The court did not hold that appellant could not prove the fact at the proper time, but merely ruled, and so stated at the time, that the evidence was not admissible on cross-examination. If the plaintiff, on her direct examination, had given evidence in reference to her character, then, of course, the appellant would have been entitled to cross-examine her fully on this subject. But such was not the case. The plaintiff, on her direct examination, was asked nothing and said nothing in regard to her character, and it was proper to confine the cross-examination to facts called out in chief.

The next question presented is in reference to certain remarks of the court which are claimed to have been prejudicial to the appellant. The appellant had called a Mrs. Geer as a witness, who, when asked a question, would proceed and narrate something which had no relevancy to the question asked. This had been repeated several times, when the following occurred:

Q. "Tell what the conversation was.

A. "At Anna Wood's?

Q. "Yes.

A. "Well, she and Mr. John Hampton were there, and so was Ada Hampton and some other gentleman. I went on the seven o'clock train in the morning to do their work. Mrs. Woods hired me to keep her house up.

The court: "That will all be excluded, and if there is any more of that kind of stuff I will have to fine somebody. There is no use taking up time with that kind of trash.

Mr. Salmans: "I don't think it is any more trash than their evidence.

The court: "I think it is. I will see about that. I want no more such stuff as that."

While, perhaps, the court was not fully justified in characterizing what the witness had said as "stuff" and

".trash," yet the answer of the witness was not responsive to the question which had been asked her, and the court was justified in excluding the answer from the jury, and we are not prepared to hold that the remarks of the court were of such a prejudicial character as to work a reversal of the judgment. The court, on the trial of a cause, has the undoubted power to confine witnesses to answer such questions as may be propounded to them, and prevent them from bringing matters into the case which are not relevant and have no legitimate bearing on the issues involved.

Under the third head relied upon, it is claimed that the court erred in giving instructions 4 and 5 for plaintiff. Instruction No. 4 given for plaintiff was as follows:

"The court instructs the jury that one of .the modes recognized by law for impeaching the veracity of a witness is the introduction of persons as witnesses who testify that they are acquainted with the general reputation for truth and veracity of the person sought to be impeached, in the neighborhood in which he resides; and if the jury believe, from the evidence in this case, that the reputation for truth and veracity of any party or witness who has testified before you, in the neighborhood where he resides, is bad, then the jury have a right to disregard the whole of such person's testimony and treat it as untrue, except so far as it is corroborated by other credible evidence or by facts and circumstances proved on the trial."

The fifth instruction directed the jury that if they believed, "from the preponderance of the evidence, that the general reputation for truth and veracity of any person who testified upon the trial of the cause * * * has been successfully impeached, or that any witness has willfully sworn falsely as to any matter or thing material to the issues of this case, then the jury are at liberty to disregard the entire testimony of any such witness, except in so far as the same has been corroborated by other

credible evidence, or by facts and circumstances proved upon the trial of this cause."

We think the law is well settled that where the general reputation of a witness for truth and veracity is bad in the neighborhood where he resides, the jury may disregard his evidence, except so far as it is corroborated by other evidence or by the facts and circumstances proven on the trial,—and this is the substance of the fourth instruction. The fifth instruction announces the same principle, with the addition that if any witness has willfully sworn falsely as to any matter or thing material to the issue. The instructions are, in our opinion, sustained by *Freeman* v. *Easly*, 117 Ill. 317, *Hirschman* v. *People*, 101 id. 568, and *Miller* v. *People*, 39 id. 457. In the last case cited an instruction in substantially the same language as No. 5 was considered and sustained. Indeed, the sixth instruction given at the request of appellant announces the same rule contained in the two instructions complained of in the argument.

Instructions 6 and 8 given for the plaintiff have been criticised in the argument, but no substantial objection has been pointed out to either of them. The law involved in the instructions, in our opinion, might have been given to the jury in fewer words, but we do not think anything contained in the instructions was calculated to mislead the jury.

On the motion for a new trial one ground relied upon was newly discovered evidence, and certain affidavits were introduced in support of the application, but in the brief and argument of counsel for appellant the ruling of the court on that branch of the case has not been called in question, and it will be presumed the application for a new trial on the ground of newly discovered evidence has been abandoned.

Perceiving no error in the record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*