THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS GROSENHEIDER, Plaintiff in Error.

*Opinion filed December 16, 1914—Rehearing denied Feb. 5, 1915.*

1. CRIMINAL LAW—*when a person cannot escape consequences of killing by setting up claim of self-defense.* A person who seeks and brings on an assault, and who, when he finds the person assaulted is armed and ready to defend himself, produces a weapon and kills him, cannot escape the consequences of the killing by setting up a claim of self-defense.

2. SAME—*when the Supreme Court will not reverse on the evidence.* It is only when the Supreme Court is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and well founded doubt of the guilt of the accused, that it will interfere on the ground that the evidence does not support the verdict.

3. SAME—*when instruction as to what does not justify killing is not erroneous.* An instruction given at the request of the People, stating that although the jury might believe, from the evidence, that the deceased had a club and spade with him at the time and immediately before he was killed, that fact, alone, would not justify the accused in killing him, is not erroneous because it does not mention the fact, testified to by the accused, that the deceased had struck the accused with the spade and had raised the spade to strike him again, where such facts are mentioned in other instructions for the People on the same subject of self-defense.

4. SAME—*what necessary to justify killing though the deceased was the assailant.* The mere fact that the deceased was the assailant and had struck the accused with a spade and was about to strike him again does not justify the accused in striking the deceased a mortal blow with a club, provided such mortal blow was not necessary, or apparently necessary, in order to save the life of the accused or prevent his receiving great bodily harm.

5. SAME—*when refusal of an instruction stating difference between murder and manslaughter is harmless.* The refusal of an instruction stating the difference between murder and manslaughter is harmless, where the jury found the accused guilty of manslaughter, only.

6. SAME—*instruction as to impeaching witness should refer to his "reputation" for veracity and not to his "character."* An instruction upon the subject of the impeachment of a witness should refer to the "reputation" of the witness for truth and veracity and not to the "character" of the witness in respect to such matter.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. A. M. ROSE, Judge, presiding.

MILLER & McDAVID, and J. E. HOGAN, (H. L. BAL-LARD, and J. L. DRYER, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, J. EARL MAJOR, State's Attorney, and EUGENE P. MORRIS, (THOMAS A. GASAWAY, and HILL & BULLINGTON, of counsel,) for the People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The plaintiff in error, Louis Grosenheider, together with his father, Herman Grosenheider, Sr., and his two brothers, Herman Grosenheider, Jr., and Edward Grosenheider, were indicted by the grand jury in the circuit court of Montgomery county, at the November term, 1913, for the murder of August Grosenheider, and on a trial had in that court the jury returned a verdict finding the plaintiff in error guilty of manslaughter and his age to be thirty-four years, and finding the other defendants not guilty. A motion for a new trial was made and overruled by the court and judgment rendered on the verdict, and said defendant was sentenced to the penitentiary. He has sued out a writ of error to this court, assigning as error the improper admission of evidence over the objection of defendants; the giving and refusal of certain instructions; that the verdict of the jury is contrary to the evidence in the case, and that the State's attorney made improper remarks to the jury in his closing argument.

The circumstances of the homicide were as follows: The deceased, August Grosenheider, was the son of Frank Grosenheider, Sr., and the brother of Frank Grosenheider, Jr. Herman Grosenheider, Sr., and Frank Grosenheider, Sr., were brothers and lived on adjoining farms, the former residing in Macoupin county and the latter just across the line, east, in Montgomery county. It appears from the evidence there had been a dispute for many years

between them as to the exact location of a portion of the boundary line between their farms and the dispute had caused trouble between their respective families. About six weeks prior to the fight in which August Grosenheider received the injuries which caused his death, while plaintiff in error and his brothers, Herman, Jr., and Edward, were working in the road near the point in dispute, August Grosenheider, the deceased, and Frank, Jr., passed in wagons. They had some words, and Frank, Jr., got out of his wagon and threatened his cousins, Louis and Herman, Jr., with a shovel, but was persuaded by his brother, August, to get into his wagon and drive on. On the morning of November 20, 1913, the day of the homicide, plaintiff in error, while delivering milk at the station of an interurban road near the farm, was attacked by Frank, Jr., and they had a scuffle at the station platform. The team of plaintiff in error ran away and ran home, and Frank followed him part of the way, daring him to fight. Plaintiff in error walked home, and soon after his arrival Frank Grosenheider, Sr., together with his sons, Frank, Jr., and August, the deceased, about nine o'clock in the forenoon, loaded a wagon with posts and some tools. Frank, Jr., also placed in the wagon three clubs, and they then drove down to the disputed line, which was along a hedge running north and south between the two farms. The hedge extended up to a public road which ran east and west past the two farms. Frank Grosenheider, Sr., claimed the land up to the hedge, while Herman Grosenheider, Sr., claimed that the line was about four feet farther east. There had been a right of way along this line for many years which had been sold by Frank Grosenheider, Sr., to one Prange, who a few days before had re-conveyed the right of way to Frank Grosenheider, Sr. The purpose of Frank Grosenheider, Sr., and his sons in driving down to the disputed point was to put in a gate at the place where the former right of way came out on the road and to repair the fence along the road,

The plaintiff in error and his father and two brothers, perceiving Frank Grosenheider, Sr., and his sons, Frank, Jr., and August, at the disputed place, went from their house down to where they were working. As to what happened immediately afterward there is a dispute and the evidence is naturally conflicting. Plaintiff in error and his brothers claim that they remonstrated with Frank, Sr., and Frank, Jr., and August for pulling out some stakes which had been set east of the hedge to mark the boundary line as claimed by Herman Grosenheider, Sr., between the two farms, and also engaged in a dispute as to the location of the boundary line, one side claiming the line of stakes and the other the hedge as the true boundary. They also claimed that Frank Grosenheider, Jr., took the three clubs which he had placed in the wagon before starting and handed one to his father, threw one to his brother August and kept one for himself; that Frank, Jr., and his father attacked the plaintiff in error and his brothers with the clubs and August struck the plaintiff in error with a spade with which he had been digging a post-hole and knocked him down, and was in the act of striking him again when in self-defense he picked up from the ground one of the clubs that had been brought there by Frank, Jr., and struck August the fatal blow. Frank Grosenheider, Sr., and his son Frank, Jr., testified, in substance, that soon after they arrived at the disputed point and commenced setting posts to erect the gate they saw plaintiff in error and his two brothers coming towards them down the road, and their father, Herman Grosenheider, Sr., coming across the field from an orchard with two clubs in his hands; that Herman Grosenheider, Sr., asked Frank, Sr., what they were doing, and he replied, "Digging a post-hole;" that Herman, Sr., replied, "You can't do it;" that Frank, Sr., said that he had bought the land back from Prange, and Herman, Sr., called him a liar and a vile name; that Edward took hold of him and pulled him away from the hole he was digging; that

Herman, Sr., struck·him on the head with one of the clubs he had brought; that August·said to Louis, the plaintiff in error, "I don't want to fight," and Louis said, "No;" that Louis struck·August on the head with a club, and he fell; that Louis and his father and two brothers got Frank Grosenheider, Sr., down and beat him; that Frank, Jr., came to his rescue with a club and they turned on him and tore his shirt off; that Frank, Jr., got to his wagon and drove away and summoned some of the neighbors, who came to the scene of the fray and placed August in a wagon and took him home; that the same day he was taken to a hospital at Litchfield and on November 28, following, he died there from a fractured skull, caused by the blow given him by plaintiff in error with the club during the fight.

It is contended by the People that even if the version· of the affair as given by plaintiff in error and his brothers is true, he cannot justify his act in striking deceased the fatal blow by claiming that he acted in self-defense. There is no question but that plaintiff in error and his father and brothers went from their home to the scene of the fray and deliberately sought the quarrel and fight in which they engaged on their arrival. Plaintiff in error testified in his own behalf on the trial and admitted that he picked up a club and struck the deceased, and there is no question but that such was the blow that caused his death. When the accused seeks and brings on an assault, and, when.he finds the person assaulted is armed and ready to.defend himself, produces a deadly weapon and kills him, he cannot escape the consequences of the killing by setting up a claim of self-defense. *Henry* v. *People,* 198 Ill. 162.

The strip of land in dispute was east of the hedge which was the division fence at that place between the land of Frank Grosenheider, Sr., and Herman Grosenheider, Sr., and hence it was within the close of Frank, Sr., and he was in possession. Plaintiff in error and his father ·and brothers had no right to disturb that possession by

force. If, as a matter of fact, the true boundary was east of the hedge between the two farms, as they claimed, there was a way in which their claim could be asserted and established by law. However, it is hardly necessary to consider these phases of the affair in order to determine the question as to whether or not plaintiff in error could claim to be acting in self-defense when he struck the fatal blow. There were two different versions of the fight and the participants on each side testified. The jury heard and saw the witnesses. In cases where the evidence is conflicting, depending upon the credibility of the opposing witnesses, the finding of the jury must be regarded as conclusive unless it is reasonably clear that an error has been committed. It is only where the court is able to say, from a careful consideration of the whole of the testimony, that there is clearly a reasonable and well founded doubt of the guilt of the accused, that it will interfere on the ground the evidence does not support the verdict. (*Gainey* v. *People,* 97 Ill. 270; *People* v. *Deluce,* 237 id. 541; *People* v. *Hubert,* 251 id. 514.) It cannot be said that the evidence does not support this verdict.

Our attention has not been called by the printed argument of the plaintiff in error to any evidence that was improperly refused on behalf of the plaintiff in error nor to any evidence that was improperly admitted on behalf of the People, nor has any improper argument made on behalf of the prosecution been brought to our attention.

Instructions Nos. 14, 15 and 16 on behalf of the People are objected to. Instructions Nos. 1, 2, 3, 4, 10, 11, 15, 16, 17, 21 and 23 were offered in behalf of plaintiff in error and refused, and such refusal is assigned as error. Instruction No. 14 is as follows:

"The court instructs the jury that although you may believe, from the evidence, that the deceased, August Grosenheider, had a club and a spade with him at the time and immediately before he was killed, that fact, alone, would

not justify the defendants, or either of them, in taking the life of August Grosenheider, but it must appear that at the time of the killing the defendants, or either of them, were in actual or apparent danger of receiving great bodily harm or losing his or their lives, and that the danger was so urgent and pressing that such killing of August Grosenheider was necessary, or apparently so, in order to save his or their own lives or prevent him or them from receiving great bodily harm."

It is contended that the instruction is not based on the evidence and that it is not shown by the evidence that August had a club. It is also contended that the instruction should have contained all the facts in evidence bearing upon the question of self-defense, and that it fails to mention what is shown by the evidence claimed by the defendants, that, at the time, August had the spade raised to strike the plaintiff in error. There is evidence in the record that while the plaintiff in error and the others were quarreling over the boundary line, Frank Grosenheider, Jr., took the three clubs from the wagon, which he had placed there before leaving his father's place, and handed one of them to August or threw it on the ground beside him. It also appears that August had a spade, and plaintiff in error testified that August struck him with a spade first, and had the spade raised to strike again when plaintiff in error struck August with the club. Plaintiff in error was the only one who testified that August struck him first and was in the act of striking again. His two brothers, Edward and Herman, Jr., did not so testify, and the other two witnesses, Frank Grosenheider, Sr., and Frank, Jr., testified that August struck no one and did not want to fight. It cannot be said that the instruction is not based upon the evidence or that it erroneously states the rule as to self-defense.

Instruction No. 15 is as follows:

"The jury are further instructed that although you may believe, from the evidence, that Frank Grosenheider, Jr.,

put a club or clubs in the wagon in which the deceased, his father and his brother, Frank, Jr., rode from their home to the place where August Grosenheider met his death; and you are further instructed that although you may believe that the said Frank Grosenheider took the club or clubs out of the wagon and handed one to his father and offered one of the clubs to his brother, August, or handed it to his brother, August, and afterwards that his brother, August, picked up the club and struck the defendant Louis Grosenheider with the same; and you are further instructed that although you may believe that the deceased prior to that time struck the defendant Louis Grosenheider with a spade and that the deceased made the first attack upon the defendant Louis Grosenheider, yet if you further believe from the evidence, beyond a reasonable doubt, that at the time the mortal blow was given by the defendant Louis Grosenheider, if you believe from the evidence, beyond a reasonable doubt, he struck the mortal blow which caused the death of August Grosenheider, it was not necessary or apparently necessary in order to save his own life or to prevent his receiving great bodily harm, then the jury would not be justified in acquitting the defendant Louis Grosenheider under a plea of self-defense interposed in this case."

Instruction No. 16 is as follows:

"You are further instructed that although you may believe, from the evidence, that the deceased first struck the defendants, or one of them, with a shovel, and that he made the first attack upon the defendants, or any of them, yet if you further believe from the evidence, beyond a reasonable doubt, that at the time the mortal blow was given by defendants, if you believe, beyond a reasonable doubt, that the said mortal blow was given by the defendants, it was not necessary or apparently necessary in order to save their own lives or to prevent their receiving great bodily harm, then the killing would not be justifiable under the plea of self-defense interposed in this case."

While it is true, as contended by counsel for plaintiff in error, that the evidence does not show that August struck the plaintiff in error with a club, we do not see how such statement in the instruction could in any way prejudice the plaintiff in error. It would be rather in his favor if he was struck by a club, as well as a spade, before striking back, as he would have all the more reason for defending himself. While to that extent it was not based upon the evidence, it was a harmless error which in no way prejudiced the plaintiff in error. It is claimed that the assumption that August had a club in his hand which he used on plaintiff in error would tend to discredit the evidence of plaintiff in error that the club he used was one which had been thrown on the ground by the side of August by his brother, Frank, but this reasoning is rather remote, and we think the jury fully understood the evidence in this respect and were not misled thereby. It is also contended that these instructions repeat the same proposition over again and are argumentative. They are somewhat subject to this fault but were intended to be given on different phases of the evidence, and were not improper to the extent that it would require a reversal of the case. Furthermore, examination of all the instructions of the series shows that the court gave at the instance of plaintiff in error five instructions, numbered from 23 to 27, inclusive, on the question of self-defense. Without repeating them here, it is sufficient to say that these instructions fully advised the jury from the viewpoint of counsel for plaintiff in error, and we cannot say, after reading the whole series of instructions, but that the jury were fairly, and even favorably, instructed by the court as to the rights of plaintiff in error.

We have examined the refused instructions. There were altogether forty-five instructions given,—twenty-seven on the part of plaintiff in error and eighteen on the part of the prosecution. Refused instructions Nos. 1, 3, 4, 11, 15 and 17 are instructions on the law of self-defense. We

think the matters in these instructions were fully covered by
the five instructions given on self-defense, which covered
every possible phase of the case, and there was no error
in refusing them.   Instruction No. 2 refused was an in-
struction defining the difference between murder and man-
slaughter, and also as to self-defense.   As the jury found
the plaintiff in error guilty of manslaughter the refusal of
this instruction, in any event, did no harm, and the portion
of the instruction as to self-defense was covered in the
others.   Refused instruction No. 10 was an instruction as
to the credibility of a witness for the prosecution who, it
is claimed, had been successfully impeached.   The effect of
the testimony of this witness was that plaintiff in error and
his brothers, or some of them, had previously offered to
pay his fine if he would assault August Grosenheider, the
deceased.   The object of this testimony was undoubtedly to
show malice on the part of the accused, to sustain the in-
dictment for murder.   But, again, as the jury only found
plaintiff in error guilty of manslaughter it could not be said
that the testimony of the witness in question was believed
or had any weight with the jury, and no material harm
was done by refusal of the instruction.   The instruction
differs from an instruction approved by this court in the
case of *Hill* v. *Montgomery,* 184 Ill. 220, cited by counsel
for the plaintiff in error, in telling the jury that "if they
believe from the evidence in the case that the *character*
of the witness for truth and veracity in the neighborhood
where he resides is bad."   Such instructions should refer
to the reputation of the witness for truth and veracity,—
not to his character.   Instruction No. 13 given in behalf
of the defendants was to the same effect as refused instruc-
tion No. 10, except that it did not refer to the impeached
witness by name.   Refused instruction No. 16 was to the
effect that the jury must believe the defendants guilty be-
yond all reasonable doubt before they could convict, and
was fully covered by other instructions.   Refused instruc-

tions Nos. 21 and 23 were on self-defense and reasonable doubt, and were also fully covered by the other instructions given on those points.

On a careful examination of the entire record we find no error sufficient to justify reversal, and the judgment of the circuit court will be affirmed. *Judgment affirmed.*