(No. 12561.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR SCHOOP, Plaintiff in Error.

*Opinion filed April 15, 1919.*

1. CRIMINAL LAW—*when Supreme Court will not reverse judgment of conviction on evidence.* The Supreme Court will not reverse a judgment of conviction on the evidence merely because only one witness testifies to the commission of the crime and he is contradicted by the accused.

2. SAME—*when, only, Supreme Court will interfere on ground that evidence does not support the verdict.* It is only when the Supreme Court is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and well founded doubt of the guilt of the accused that it will interfere on the ground that the evidence does not support the verdict.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JACOB H. HOPKINS, Judge, presiding.

WILLIAM A. JENNINGS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and SUMNER S. ANDERSON, (EDWARD E. WILSON, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Arthur Schoop, (otherwise called Arthur Shupe,) was indicted and convicted in the criminal court of Cook county for the larceny of $90 in money and was sentenced to an indeterminate term in the reformatory at Pontiac. He has sued out this writ of error to review the judgment and sentence.

The sole complaint against the verdict and judgment in this case by plaintiff in error is that the evidence is insufficient to sustain them.

Only three witnesses testified: Louis Maraino, the prosecuting witness; H. J. Crowley, a detective or police officer of the city of Chicago who was assigned to the pickpocket detail, and plaintiff in error. The prosecuting witness testified, in substance, that on Decoration day, 1918, between nine and ten o'clock in the evening, he and his little girl, about ten years of age, boarded a Twelfth street car at Kedzie avenue and rode one block to Troy street. They boarded the car in advance of other passengers and walked through it to the front end and Maraino told the motorman to let them off. Plaintiff in error and another man stood behind him as the motorman opened the door, who interfered with his getting off of the car. The man who was with plaintiff in error got in front of the prosecuting witness and pretended to be drunk and prevented the

prosecuting witness from getting off of the car, while the plaintiff in error stood at his side and a little to his rear and went through his pocket and took therefrom a pocket-book containing all of his money, $90 in United States currency and some forty or fifty cents in change, and also a check for $9.58 and a receipt for a Liberty bond. After getting his pocket-book and valuables aforesaid plaintiff in error shoved the prosecuting witness off of the car, and the motorman closed the car door and immediately applied the power and drove the car away at such a rate of speed that the prosecuting witness was not able to again enter it. He then went to his place of business on Kedzie avenue and called up the police and reported his loss. On the following Monday he went to the detective bureau and in the presence of policeman Crowley inspected seven or eight prisoners, among whom was plaintiff in error, and positively identified him as the man who picked his pocket. He further testified that plaintiff in error, at the time he stole the money and other valuables, wore a dark suit of clothes and a felt hat; that he did not remember the color of the hat but was able to positively identify the plaintiff in error at the detective bureau and at the trial by his face, of which he had good view at the time he was robbed, and that he did not identify or point out anyone other than plaintiff in error at the detective bureau as the party who picked his pocket.

The substance of policeman Crowley's testimony is that he arrested the plaintiff in error on Sunday following the theft, and on the next day (Monday) took the prosecuting witness to the detective bureau, with other persons whose pockets had been picked, and told them that he would bring the prisoners in and for them to look them over carefully and see if they could identify any of the prisoners as the person or persons who had picked their pockets, and to be sure about the identification and to make no guesses; that

the prosecuting witness identified plaintiff in error and no one else as the person who had picked his pocket and then filed a complaint against him, and that he identified plaintiff in error in the presence of six other prisoners.

Plaintiff in error testified in his own behalf and denied that he wore a felt hat and a dark suit of clothes on Decoration day, and also denied that he was the owner of any such a suit of clothes. He further denied that he was on a Twelfth street car on that day and also positively denied that he had picked the pocket of Maraino, and testified that he had never seen Maraino in all his life until Maraino identified him at the police station. He did not testify or offer to prove by any witness where he was on Decoration day or with whom he was associated. While he testified that the prosecuting witness identified another man at the detective bureau as the person who picked his pocket he offered no corroborating testimony in proof of that claim, and the testimony of the police officer and the prosecuting witness was very positive to the effect that his testimony in this particular is untrue.

This court will not reverse a judgment of conviction on the evidence merely because only one witness testifies to the commission of the crime and is contradicted by the accused. (*People* v. *Zurek,* 277 Ill. 621.) In *Gainey* v. *People,* 97 Ill. 270, this court said: "The most important and useful function which the jury is required to perform is to determine on which side of a controversy the real truth lies where the testimony as to the material facts is directly in conflict and irreconcilable, and its conclusion in such case of necessity depends largely upon the credit to be given to the opposing witnesses, hence it is universally admitted to be the peculiar province of the jury to determine the credibility of the witnesses." It is only when this court is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and

well founded doubt of the guilt of the accused, that it will interfere on the ground that the evidence does not support the verdict. (*People* v. *Grosenheider,* 266 Ill. 324; *Graham* v. *People,* 115 id. 566.) This must necessarily always be the rule where the court has committed no error in its ruling or where no such errors are complained of and no other improper conduct of the jury or of counsel is shown, as it was never the intention of the law that the court should usurp the province of the jury.

The evidence in this case, when considered as a whole, is amply sufficient to sustain the verdict of the jury. The testimony of the plaintiff in error is a very unsatisfactory story when considered as a whole. Plaintiff in error ought to have been able to give some account of himself as to where he was on Decoration day and with whom he was associating,—at least if he cannot do so he ought to furnish some satisfactory reason for not doing so. There is absolutely no attempt on the part of plaintiff in error to furnish any account of himself at the time this larceny was committed or to offer any excuse or reason why he did not do so. There is nothing in this record that would warrant a jury to return a verdict of not guilty in favor of plaintiff in error, against the positive testimony of the prosecuting witness, except the bare denial of plaintiff in error himself of the main incriminating facts, elicited by direct questions propounded to him by his counsel. Besides, he is positively contradicted in a very material matter by both the prosecuting witness and policeman Crowley. The judgment and sentence of the court, under such a state of the evidence, should be and are affirmed.     *Judgment affirmed.*