People v. Hubbard, 245 Ill. App. 197.

## The People of the State of Illinois, Defendant in Error, v. William C. Hubbard, Plaintiff in Error.*

1. WITNESSES—*contradictory statement as not affecting weight of testimony.* The weight of the testimony of a witness is not destroyed by contradictory statements as to dates and other matters of no importance in the case.

2. ATTORNEYS AND COUNSELORS—*admissibility of evidence on criminal prosecution.* In a prosecution of one for holding himself out as a solicitor without being licensed to practice law, a receipt for money, although not showing for what purpose given, and although made out to the father of the woman desiring a divorce, is properly admitted in evidence along with the testimony of the woman that she paid the money to the defendant for him to obtain a divorce for her.

3. ATTORNEYS AND COUNSELORS—*criminal liability for acting as solicitor without being licensed.* One shown to have accepted retainers to obtain divorces, without having a license to practice law, held guilty of acting as a solicitor contrary to law and is subject to the penalties prescribed in Cahill's St. ch. 38, ¶ 281.

* Received from clerk of Appellate Court, August 8, 1927.

4. CRIMINAL PROCEDURE—*judgment not reversed for contradictory evidence.* In a criminal case the judgment against the defendant, of whose guilt there is no reasonable doubt, will not be reversed as against the evidence merely because the evidence is contradictory.

Error by defendant to the County Court of Franklin county; the Hon. SYDNEY M. WARD, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed March 10, 1924.

J. E. CARR, for plaintiff in error.

ROY C. MARTIN, for defendant in error.

MR. JUSTICE BOGGS delivered the opinion of the court.

An information consisting of three counts was filed in the county court of Franklin county, charging plaintiff in error: First. With holding himself out as authorized to practice law in the State of Illinois. Second. With representing himself as authorized to practice law in the State of Illinois. Third. "Not having been regularly licensed to practice law in the Courts of the said State of Illinois, did then and there unlawfully hold himself out as a solicitor in chancery."

A plea of not guilty having been entered by plaintiff in error, a trial was had, and a verdict returned finding him guilty on the third count of said information. Judgment was entered on the verdict and plaintiff in error was fined $200 and costs and sentenced to the county jail for 30 days. To reverse said judgment this writ of error is prosecuted.

The principal ground urged by plaintiff in error for a reversal of said judgment is that the verdict is not supported by the evidence.

Section 1 of chapter 38, ¶ 281, Cahill's Revised Statutes, provides as follows: "That any person residing in this State not being regularly licensed to practice in the courts of this State, who shall in any manner hold himself out as an attorney at law or solicitor in chancery or represent himself either verbally or in

writing, directly or indirectly, as authorized to practice law, shall be demed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than $25, nor more than $500, or imprisonment in the county jail not exceeding one year, or by both fine and imprisonment, at the discretion of the court.''

Plaintiff in error resides and maintains an office in the village of Ziegler in said county, and was the acting city attorney of said village.

Helen Psepiorkoski, a witness for the People, testified that she went to plaintiff in error's office about the month of January, 1922, and that she: ''Had a conversation with defendant at the time I visited his office; talked to him about a divorce. I asked him if he was a lawyer and he said 'Yes.' I told him about my case; told him my husband was a drunkard and gambled; was all kinds of a brute. Defendant said he would take the case. I asked him how much it would take, and he said $45.00  Paid him $20.00 at that time. I paid him $20.00 the first of January, 1922, and $23.00 on the 3d of January, 1922. He was going to file the divorce in Benton. I have a receipt showing I paid him $45.00.''

Another witness, one Minnie Mabon, testified on behalf of the People that she: ''Went to see him (plaintiff in error) about my husband; told him my husband had left me. He told me he would do what I wanted; get me a separation or divorce. I agreed for him to get me a divorce, as John Mabon had left me and left me with nothing. He said he was a lawyer and could get a divorce for me. I paid him $15.00; didn't ask for a receipt.''

One Jacob Gabor, a witness on behalf of the People, testified that in February, 1923, he had a conversation with plaintiff in error in regard to a lawsuit he had in Ziegler, and that he paid plaintiff in error $15 in connection therewith, and that ''Mr. Hubbard (plaintiff

in error) told me he got license. Lawyer like any other man.''

Plaintiff in error testified on his own behalf, to the effect that he did not undertake to represent the witnesses Helen Psepiorkoski and Minnie Mabon; that he in effect told the father of Helen Psepiorkoski that he was only the city attorney, and could not practice in the circuit court. ''He (Antoni Psepiorkoski) wanted to know what I thought about her having a case, and I told him she had a mighty good one. I referred her to Mr. Carr. Mr. Carr filed her bill. * * * I didn't represent to either of them—the young lady or her father—that I was a lawyer, qualified to practice law in the courts of record.''

In connection with the testimony of the witness Mrs. Minnie Mabon, plaintiff in error testified that she (Mrs. Mabon) had her husband arrested for wife neglect. He further testified: ''I said to her, 'Minnie, I can't get you a divorce, but I can take you to a man that can if that will be any accommodation to you.' She said, 'I wish you would do it.' '' He further testified that he took said witness to Mr. Carr at West Frankfort, and introduced her to him.

In connection with the transaction with the witness Jake Gabor, plaintiff in error testified that it had to do with a case in justice court; that the case was appealed from the justice court to the circuit or county court, and that after the appeal he returned the $15 which Gabor had paid him. Plaintiff in error further testified that he told this witness that he had no license to practice in the State of Illinois.

One William O. Hill, a witness for plaintiff in error, testified that plaintiff in error told Gabor: ''I don't tend to any business over there (referring to the circuit or county court). Mr. Carr tends to all that. I am only a city attorney. If you want to get him it will cost you $15. I will call Mr. Carr and see him for you about it.'' Aside from the testimony of the witness

William O. Hill, plaintiff in error is not corroborated with reference to his version of the conversations and transactions with the parties in question.

It is the contention of counsel for plaintiff in error that the witness Helen Psepiorkoski made such contradictory statements with reference to the transaction had with plaintiff in error that her testimony is entitled to but little weight. An examination of her testimony, however, discloses that the contradictions had to do with the dates on which she had her conversations with plaintiff in error, and certain other matters of no vital importance, but so far as the substance of her statements is concerned, she did not in effect contradict herself.

Plaintiff in error contends that the court erred in admitting the receipt for $45 given by plaintiff in error, for the reason that the receipt does not state the purpose for which the money was paid, and also for the further reason that the receipt was made out to Antoni Psepiorkoski. The court did not err in admitting this receipt in connection with the testimony of the witness Helen Psepiorkoski, as it was a circumstance in the case to be considered by the jury with all the other evidence in the case. The testimony of said witness, we think, explains the purpose for which the receipt was given and how it came to be made to her father. At any rate, it was proper to go to the jury to consider, with all the other evidence in the case.

We have carefully examined the evidence in the record, and are satisfied that it was a question for the jury as to what the evidence proved, and we hold that the evidence is sufficient to support the verdict of the jury that plaintiff in error was holding himself out as a solicitor in chancery.

In *People v. Boucher*, 303 Ill. 375, the court, in discussing a question of this character, says at page 380: "The court will not reverse a judgment in a criminal case upon the ground that it is contrary to the evi-

dence, unless it clearly appears that there is a reasonable doubt of the defendant's guilt, and it cannot be said that there is a reasonable doubt of the defendant's guilt merely because the evidence is contradictory, or because more witnesses testify in favor of the defendant than in favor of the prosecution."

To the same practical effect is the holding of the Supreme Court in *People v. Hohimer*, 271 Ill. 515–519; *People v. Grosenheider*, 266 Ill. 324–329.

No complaint is made by plaintiff in error as to the rulings of the court on the instructions.

For the reasons above set forth, the judgment of the trial court will be affirmed.

*Judgment affirmed.*