(Nos. 30241, 30242, 30243.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARX E. HOLT, Plaintiff in Error.

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

HARRY S. DITCHBURNE, (DAVID F. MATCHETT, JR., of counsel,) both of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and W. S. MIROSLAWSKI, all of Chicago, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Marx E. Holt, was convicted in the criminal court of Cook County on a hearing before the court without a jury, under three separate indictments for the crime of taking indecent liberties with two girls of the age of eight years, and one girl of the age of eleven years. The cases were, by agreement, tried together. Separate writs of error have been sued out of this court and consolidated here.

One indictment charges plaintiff in error with having taken indecent liberties with Phyllis Cargain, a female child of the age of eight years. One indictment charges him with having taken indecent liberties with Helen Wrobel, a female child of the age of eight years. The third indictment charges indecent liberties with Clara Wrobel, a female child of the age of eleven years. One indictment also contained a count charging rape and two of them contained counts charging plaintiff in error with contributing to the delinquency of a minor. The court held that the

charges of rape were not proved and those counts were dismissed.

Plaintiff in error is an unmarried man, sixty-one years of age, who has been a teacher and principal in the Chicago school system from 1912 up to the time of the charges filed against him. He became acquainted with the family of John Wrobel in 1938. A firm friendship seems to have been established between him and the Wrobels, and in June, 1940, he purchased a two-story house in the city of Chicago, into which he and the Wrobels moved. The Wrobels occupied the lower floor of the house and one bedroom upstairs, while plaintiff in error retained three upstairs rooms, one of which was his office and the others his bedroom and sitting room. The Wrobel girls, named in two of the indictments, occupied an upstairs bedroom, along with an older sister who is not involved in this proceeding.

The evidence shows that Holt's position in the household was almost that of a member of the family. Both parents of the Wrobel children worked away from home and their absence brought Holt in frequent contact with the children and their playmates. He read to them frequently, aided them in their studies, and entertained them by taking them on automobile and swimming trips, all with the knowledge and approval of the parents. Phyllis Cargain lived near the Wrobel family with her maternal grandparents, Frank and Grace Kaplar, and was frequently in the Wrobel home.

In December, 1946, Mrs. Kaplar, while cleaning a bureau drawer in the room occupied by Phyllis Cargain, found a lewd note written by her granddaughter, which contained reference to immoral conduct between the plaintiff in error and Phyllis, and between him and Helen Wrobel. As a result, Frank Kaplar acquainted John Wrobel with the contents of the note, the children were ques-

tioned, and the plaintiff in error confronted with their stories and the contents of the note. He denied doing any of the acts charged.

At the hearing on the charges, Clara Wrobel testified that on one evening in June of 1944 plaintiff in error called her into his bedroom, undressed her, and took indecent liberties with her, disclosing his private parts and placing them against hers. She stated that none of her family were at home that evening and that she remained in plaintiff in error's bedroom for about an hour. She further testified that he had done the same thing to her on ten previous occasions, but nothing had occurred between them since the night in June, 1944. On cross-examination she stated that she did not tell her parents of these occurrences until the finding of Phyllis Cargain's note.

Phyllis Cargain testified that in September, 1946, she was visiting Helen Wrobel at the Wrobel home and while there went to plaintiff in error's office; that she sat on his knee and had conversation with him; that on this occasion, and in Helen Wrobel's presence, plaintiff in error put his finger into her private parts. She further testified that plaintiff in error did the same thing to her whenever she went to the Wrobel home, which she estimated to be ten times. She further testified that she had changed clothes in Holt's rooms in his presence and had worn clothes and costumes he kept in his room. She stated that on one occasion, when she and Helen were dressed in "fairy" costumes, of gauze material, owned and kept by plaintiff in error in a steel cabinet in his room, plaintiff in error told them that fairies didn't wear pants, and told them to take them off. She also testified to swimming trips to Wolf Lake in the company of plaintiff in error and Helen Wrobel, on which occasions plaintiff in error had the girls remove their suits in the water and then engaged in lewd conduct with them while both were inside

an automobile inner tube. The details of these acts need not be recounted here. She stated that she told no one of the occurrences until questioned by her grandparents in December, 1946. On cross-examination she admitted writing the obscene note found by her grandmother and testified that she learned the indecent words therein, and their meanings, from a neighbor girl.

Helen Wrobel, in her testimony, substantiated Phyllis as to the occurrences of the swimming trips, and also described the indecent liberties plaintiff in error had taken with Phyllis in his rooms in September, 1946, and on previous occasions. She also testified that plaintiff in error had frequently committed the same acts on her person as those detailed by Phyllis. She further stated that plaintiff in error kept various kinds of children's clothes in his room, and that she had changed her clothes there, in his presence, many times. None of these occurrences were reported to her parents or sister until she was questioned subsequent to the finding of Phyllis Cargain's note. On cross-examination she stated that there were other people swimming in Wolf Lake and parked along the shore in their cars on the last occasion that she and Phyllis Cargain went swimming there with plaintiff in error. She stated that the lake was shallow and the water would not go over her head.

Other witnesses called by the prosecution were the arresting officer who told of plaintiff in error's arrest; Grace Kaplar, who told of finding the obscene note; and John Wrobel, father of Clara and Helen.

Plaintiff in error testified at length in his own defense. He emphatically denied the charges of all the girls. He told of his love for children and of his particular interest in the Wrobel children, their education and welfare. He admitted reading to Helen and Phyllis while they were sitting on his lap, but denied that he had taken indecent liberties with them. From his testimony it appears that

on one occasion Phyllis Cargain was to stay all night with the Wrobel children and that she was to sleep on a cot located in plaintiff in error's sitting room. Plaintiff in error was the only adult home and sought to induce her to sleep in a sleeping-garment which he furnished, rather than in the "panties" she had worn all day, a practice which plaintiff in error says he considered unsanitary. When Phyllis refused, plaintiff in error took her home, and she became quite angry. The latter part of this incident was also described by Phyllis's grandmother, Mrs. Kaplar, when she testified for the prosecution.

He further testified that in a locker in his bedroom he had a lot of children's clothing, consisting of dresses, sun suits, underwear, nightgowns, overalls, socks, snow suits, and also some mosquito netting or material of that sort; that he had bought them for the children so that they would have clean and suitable clothing to wear; that the children were free to use the clothes as they needed them. On examination by the court he admitted that while he had bought these clothes for the Wrobel children, he had never actually given the clothes to them but just made them available to them or their friends, some of which they kept and some they returned after wearing.

Twelve witnesses testified to the previous good reputation of the plaintiff in error, in the community in which he lived, for morality, decency and law-abidance. They consisted of neighbors, school and business associates, and personal friends.

In rebuttal the prosecution offered the testimony of three young women in the vicinity, of about the age of twenty years, who testified that plaintiff in error's reputation for chastity and decency was bad, although it appeared from their cross-examination that they had not seen the plaintiff in error for ten years or more.

The chief errors urged by plaintiff in error go to the sufficiency of the evidence. It is claimed first, that the

testimony of the prosecuting witnesses was not clear and convincing, and second, that the testimony of the prosecuting witnesses was so contradictory to the laws of nature and universal experience as to be incredible and beyond the limits of human belief, and should have been rejected by the court.

Counsel for plaintiff in error has given his analysis and interpretation of the evidence in support of these arguments. We have frequently held that the facts are for the jury, or the court sitting without a jury, and this court, on review, will not disturb that finding unless it can say the finding does not meet the requirements of the law. (*People* v. *Anderson,* 375 Ill. 163; *People* v. *Boetcher,* 298 Ill. 580; *People* v. *Schoop,* 288 Ill. 44.) In criminal cases it is the duty of this court to carefully review the evidence, and if there is not sufficient to remove all reasonable doubt of the defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed. *People* v. *Kazmierczyk,* 357 Ill. 592; *People* v. *Serrielle,* 354 Ill. 182.

Counsel for plaintiff in error has cited many decisions of this court, in cases involving the crime of taking indecent liberties with children, wherein it was held that the evidence was insufficient or of an unsatisfactory nature to support a conviction. Those cases were decided solely on their facts, as this one must be, and are helpful only to re-emphasize the duty of this court to carefully review the evidence. This we have done. The testimony of the prosecuting witnesses as to the actual indecent acts is direct and positive, and was shaken only by medical testimony which proved that no rape had occurred. In view of the tender years of the prosecuting witnesses and their lack of knowledge and unfamiliarity with sexual acts, and the manner of describing them, and in view of the positive clarity of their testimony, we are unable to say that the charges here were not proved beyond all reasonable doubt.

The relationship of the parties presented ample opportunity of time and place for the acts complained of. The testimony of these children, which was little shaken on cross-examination, strongly indicates that the acts complained of did take place. We have examined the entire record carefully as well as plaintiff in error's analysis of the evidence and conclude that the trial court was justified in finding plaintiff in error guilty of the crime of indecent liberties.

It is next contended that the trial court erred in relying upon incompetent evidence to find plaintiff in error guilty. Specifically it is charged that the testimony of the three rebuttal character witnesses was incompetent. The general rule is that the accused is entitled to introduce evidence of his good character, and, if he does, the prosecution may introduce evidence in rebuttal. (*People* v. *Willy,* 301 Ill. 307; *People* v. *Haas,* 293 Ill. 274.) The witnesses, thus, were properly called. We have examined the record and find that counsel for plaintiff in error objected only to the testimony of one of these witnesses. He cannot, for the first time on appeal, object to the testimony of the other two rebuttal witnesses, and, in the absence of objection at the trial, it is deemed to have been waived. (*People* v. *Mulford,* 385 Ill. 48; *People* v. *Pierce,* 387 Ill. 608.) These girls testified that it was ten or eleven years since they had seen or known plaintiff in error. Similar character evidence in *People* v. *Willy,* 301 Ill. 307, was held incompetent because of remoteness where there was no proof to show a continuation of bad character up to the time of the trial, and it was held that an objection to such testimony should have been sustained. The trial court erred in not sustaining the objection to this testimony. However, in view of the fact that two of the witnesses were allowed to testify to similar facts without objection, the error is not such as would require a reversal or new trial. Counsel for plaintiff in error argues that the only

purpose in offering this rebuttal testimony was to create an inference of like experience on the part of those three witnesses. There is nothing in the record showing any such attempt and the court assured counsel on the trial that any such attempt would be immediately stopped. While the remoteness of this testimony in point of time rendered it objectionable, we are of the opinion that we would not be justified, for that reason, in reversing the judgments on this record.

Plaintiff in error next argues that the court and the prosecution did not consider the proper psychological factors in the case. No evidence of these psychological factors was given either by expert or lay witnesses, nor do we consider them of such a nature as to permit the trial court to take judicial notice of them. There is no basis in the record for this argument.

The trial court, in a statement made at the conclusion of plaintiff in error's trial, stated: "There isn't anything that I find in the defendant's testimony, except his general denial, that would cause me to feel that he has raised even a slight doubt in my mind as to his guilt." From this plaintiff in error now argues that the trial court did not indulge in the presumption that plaintiff in error was innocent but in effect held that plaintiff in error had the burden to raise doubt as to his guilt. This remark of the court occurred after the close of the evidence and during summation of it, and plaintiff in error cannot seriously contend that this language represented the judge's conception of the burden of proof throughout the trial. It should be noted, too, that counsel for plaintiff in error did not assign this alleged error as grounds for a motion for new trial, or a motion in arrest of judgment, or preserve an exception by a bill of exceptions, but raises the point for the first time on appeal to this court. A reviewing court will not entertain or consider points not preserved for review in

the trial court. *People* v. *Grant,* 385 Ill. 61; *People* v. *Wise,* 379 Ill. 11.

The last contention of plaintiff in error is that he was not given a fair trial because of what he calls "veiled remarks and suggestive, insinuative questions" on the part of the counsel for the People, and "sensational language" used by the trial judge. We have examined the four specific remarks of counsel for the People complained of, and find that in three of the instances the remarks were allowed to enter the record without objection on the part of counsel for plaintiff in error. In the fourth instance, objection was made and sustained by the court, and cannot be used as a basis for review here. The other remarks which plaintiff in error now insists were prejudicial, not having been properly preserved for review by objection during the course of the trial, are not open to review. (*People* v. *Sturch,* 389 Ill. 82; *People* v. *Bloom,* 370 Ill. 144.) Plaintiff in error has not set forth the alleged "sensational remarks" of the trial judge which he contends denied him a fair trial. However, it is apparent that the remarks complained of were contained in the reasons for the decision advanced by the court at the conclusion of the trial. As has been previously pointed out, the errors complained of in these remarks were not properly preserved for review and will not be considered.

We are of the opinion that the criminal court of Cook County was justified in finding plaintiff in error guilty of the crime of indecent liberties with each of the children named in the three indictments and its judgment under each indictment is affirmed.

*Judgments affirmed.*