People of the State of Illinois, Plaintiff-Appellee, v. Stephen T. Habdas, Defendant-Appellant.

Gen. No. 67–136.

Second District.

May 2, 1968.

Edwin L. Douglas, of Wheaton, and Robert W. Hotte, of Elmhurst, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Kevin P. Connelly, Assistant State's Attorney, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

Stephen T. Habdas, the defendant-appellant, and Nicholas Massesso, Jr., were jointly indicted by the Grand Jury for the offense of burglary, with intent to commit a theft on or about April 16, 1966, of a school building located at 935 Maple Avenue in Downers Grove, owned by the County Board of School Trustees of DuPage County. At a trial by jury, the defendant Habdas was found guilty, and a not guilty verdict was returned as to Massesso. Judgment was entered on the verdicts, and Habdas was sentenced to the penitentiary for not less than three nor more than eight years. It is from this judgment and sentence that he has appealed.

Gregg Rybinski, an administrative assistant of Public School Districts 58 and 59 of DuPage County, was summoned by the Downers Grove police, about 3:00 a. m., on September 16, 1966, to come to the Lincoln School located at 935 Maple Avenue—an east-west street. The school districts maintained their administrative offices on the third floor of this building.

When he arrived, the front door of the building was open and certain office equipment owned by the districts was found outside the building and in the first floor foyer. The administrative offices were in disarray. Six electric typewriters, two dictaphones, several typewriter covers and two checks were missing. This equipment

was later found alongside a ditch on 61st Street. A pane of glass was broken in a second-floor window, accessible by a fire escape and the roof of the second floor. The window, which had been locked and painted shut, was unlocked and raised.

Rybinski testified that a rectangular building juts out from the original building toward Maple Avenue, and is about 30 feet distant from the avenue curb line; that the entrance doors which face Maple Avenue, are about 30 feet back of this rectangular building, or a distance of 60 feet from the curb line; and that on September 15 and 16, 1966, there were two 100-watt bulbs over the entrance, and two 150-watt floodlights at the six corners of the building; and that the nearest corner floodlights were 30 to 40 feet from each side of the entrance which faces the north.

Officers Richard Harrison and Henry Niewold were on routine patrol duty at about 2:15 a. m., on September 16, 1966. They testified that Harrison was driving east on Maple Avenue; that as they passed the school, Niewold threw a spotlight on the entrance and they saw a 1961 Mercury, light blue or green in color, with its lights off and trunk open, backed up to the school entrance doors; and that the doors were ajar and two males were standing to the rear of the car.

Harrison testified that he stopped the car about 20 to 25 feet east of a driveway which runs from Maple Avenue to the entrance doors; that Niewold jumped out of the car and ran up the drive toward the school; that he (Harrison) attempted to back up the squad car to block the driveway, but the car stalled; and that he then got out and went back to the driveway. Both Harrison and Niewold testified that one of the parties got into the car and drove at high speed down the driveway and veered the car at Niewold, who shouted for the driver to stop as he leaped out of its path. Harrison stated that the car passed him at a speed of about thirty-five miles per hour

while he was standing on the east edge of the entrance to the driveway; that he ordered the driver to stop; that the car slowed down somewhat as it passed him; and that the driver lost control of the car and it slid sideways across Maple Avenue at a further reduced speed, then sped off in a westerly direction.

Harrison stated that he observed the face of the driver for five or ten seconds as the car passed within 10 to 15 feet to the left of him; that he recognized the driver by face but not by name; that he fired one shot from his 357 magnum "with 38 loads" at the fleeing car when it was from 50 to 75 feet away; that the lights of the car were off, but he was able to read the first four of the six digits of the license number which were DN36—; and that he radioed the central station in Downers Grove that there was a burglary in progress at the Lincoln School. Thereupon, he pursued the car; lost it, radioed the Westmont police—directly to the west —to halt any car of the noted description and with the partially reported license numbers; and then returned to the school.

The testimony conclusively established that in addition to the lights aforementioned, there was a 450-watt fluorescent street light on Maple Avenue about 15 feet from the school driveway.

Harrison further testified that when he returned to the school, Sergeant Drendel and Officer Kelly were there; that he went to the administrative offices, found them in a state of disorder and saw the broken window; that he later went to the Downers Grove Police Station and saw the 1961 Mercury Sedan which bore license number DN3648; and that there was a bullet hole directly in the center of the trunk which did not go through the metal but rather, left a groove in it.

Niewold further testified that when he threw the spotlight on the school doors, one of the parties standing behind the car in question had a "typewriter like object"

in his hands. His testimony corroborated that of Harrison relative to the manner in which the car left the school entrance, except that he testified that the lights of the car were on as it went by him.

Niewold also stated that the car passed within 1 or 2 feet from him; that he looked into the side window and saw the driver's face which was illuminated either by the reflection from the floodlights or from the dashlights or street light; that he identified the driver whom he knew by sight but not by name; that he then unsuccessfully pursued the other party who ran around the school building to the rear; that Drendel and Kelly arrived as he returned to the school; that he went to the administrative offices which had been ransacked; that all but one typewriter had been removed; that a pane of glass in a window, which had been painted shut, was broken; that the window was unlocked and raised; and that there were no jimmy marks on the window.

Officers Drendel and Kelly testified with reference to what they observed when they arrived at the building at about 2:30 a. m., September 16, 1966. Their testimony in this respect corroborated the testimony of the People's other witnesses. They further testified relative to discovering the missing typewriters and dictaphones along a ditch on 61st Street while searching for the party who ran from the school after the 1961 Mercury had been driven from the school entrance.

Robert Brindac, a police officer of the Village of Westmont, testified that he was driving a police car in Westmont about 2:30 a. m., on September 16, 1966, when he received a dispatch to be on the lookout for a 1961, blue-green Mercury Sedan with a partial license number DN36—, with one male driver who was wanted for burglary in Downers Grove; that he saw such a vehicle about 2:49 a. m., bearing license number DN3648 and he followed it until it stopped at 413 North Grant Street; that he stopped behind it, called to the driver, whom he

335

recognized as Stephen Habdas, when he got out of the car; that he told Habdas he would have to go with him to the police station; that he permitted him to go into the house to tell his wife, and then accompanied him to the police station.

Detective Larry Nielsen of the Downers Grove police force testified that he found no usable fingerprints on any of the machines in question, and found no jimmy marks on any doors or windows.

The defendant, Habdas, called his brother, James Habdas, who testified that the indentation on the trunk of the 1961 Mercury was a built-in feature of the car to aid in raising the trunk door. The People called Jack Hendrycks, service manager of the Lincoln-Mercury dealer in Glen Ellyn, who testified to the contrary. The defendant's brother and his mother, Naoma Habdas, testified that the lock on the trunk of the car was damaged a long time prior to September 15, 1966.

Habdas testified on his own behalf. He stated that he was not at the Lincoln School on September 16, 1966; that he did not enter it or commit a theft therein; that he knew Officer Harrison, and Harrison knew him by name; that he knew Sergeant Brindac very well, and that Brindac had knowledge of the appearance of the 1961 Mercury. He also stated that on September 16, 1966, he was employed and worked at the Venice Pizzaria in Downers Grove; that his working hours were from 4:00 p. m. until 12:00 p. m., on weekdays, and from 4:00 p. m. until 2:00 a. m., on Fridays and Saturdays; that he made his last delivery a little after 2:00 a. m., on September 16, returned to the Pizzaria and spent about ten minutes mopping the floor; that he then asked his employer to make a pizza for him, which took twenty to thirty minutes; and that he put the pizza in the car and went home. He also testified that if September 15, 1966, were a Thursday, that his working hours on that date would have been until 12:00 p. m. A calendar for the year 1966

was admitted in evidence, and it was stipulated that September 15, 1966, was a Thursday.

In this court, the defendant contends that the evidence adduced at the trial failed to establish his guilt beyond a reasonable doubt; that his identification was based on improbable testimony; and that the court erred in refusing to instruct the jury on the question of circumstantial evidence.

The defendant argues that there was no proof of forcible entry into the building; that there were no jimmy marks on the doors or windows; that the window which was broken could have been broken in many ways; that no fingerprints were found on any of the typewriters or dictaphones; and that there was no testimony that the defendant was wearing gloves. He also urges that the testimony of Harrison and Niewold was in direct conflict, in that Niewold stated that the lights of the car were on as it approached and passed him and Harrison stated that the lights were off. He also argues that if Harrison recognized the defendant as he stated he did, then he would have transmitted messages to the Downers Grove and Westmont police to be on the lookout for Stephen Habdas, who was driving a blue-green 1961 Mercury sedan.

█ The jury found, and we agree, that the evidence established that a forcible entry had been made into Lincoln School. The glass in the lower pane of the window into the administrative offices of the building was broken; the window was unlocked and raised, even though it had been painted shut. Fingerprints were not required for identification of the defendant. Harrison and Niewold each testified that they recognized him by face when he drove by them while fleeing from the school building in the 1961 Mercury sedan, and they identified him at the trial by name and face. Also, the description of the car and the partial license number identification DN36—, coincided exactly with the car driven by the defendant

to his home at 413 North Grant Street in Westmont when he was apprehended at 2:49 a. m., September 16, 1966, by Sergeant Brindac. The time sequence also fits perfectly into the events connected with the offense charged.

Since the testimony of Harrison was that he identified the defendant at the time he sped away in the 1961 Mercury sedan, by face only, it could not be expected that he would transmit messages concerning the burglary, which would identify the defendant by name. Also, the testimony of Harrison and Niewold concerning the lights of the car is not necessarily conflicting. Niewold said the lights were on when the car approached and passed him and Harrison said they were off as the car sped westerly. It would be a natural reaction to turn on the lights when starting a car at night. This is particularly true if the driver desired to blind an approaching officer to avoid identification. Also, it would be prudent to turn off the lights after passing an officer if the driver wanted to prevent the officer from reading the car license number.

██ ██. The testimony of the defendant and the calendar conclusively established that he worked until midnight on September 15, 1966. Such evidence tended to demolish and impeach his alibi testimony. See: People v. Booher, 73 Ill App2d 226, 229, 218 NE2d 779 (1966). Also, there is no obligation on a trial court or jury to believe alibi testimony over the positive identification of the accused. People v. Setzke, 22 Ill2d 582, 586, 177 NE 2d 168 (1961). Where there is positive identification of a defendant by credible witnesses, as in the case at bar, a guilty verdict may be sustained notwithstanding there may be otherwise uncontradicted alibi evidence and even though the alibi witnesses may be greater in number than those identifying the accused. People v. Wheeler, 5 Ill2d 474, 483, 126 NE2d 228 (1955). In the case at bar both Harrison and Niewold positively identified the

defendant, and the defendant was the only alibi witness. He did not call his employer. We believe that the defendant's alibi testimony contained its own impeachment. Also, the car identification, the time sequence of the burglary, and the defendant's arrest while driving the car, were compelling facts for the consideration of the jury with reference to his guilt.

 The defendant denied that he entered the school building on September 16, 1966, and that he committed a theft therein. Thus, the evidence on this issue was conflicting, as was the evidence on the defense of alibi. It was the function of the jury to determine the credibility of the witnesses and the weight to be given to their testimony. The jury determined these issues adversely to the defendant and, under the circumstances of this case, we will not substitute our judgment for that of the jury. People v. Lobb, 17 Ill2d 287, 294, 161 NE2d 325 (1959). In People v. Stangeland, 76 Ill App2d 77, 220 NE2d 748 (1966), at page 80, the court, in quoting from People v. Schoop, 288 Ill 44, 122 NE 836 (1919) stated:

> "It is only when this court is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and well founded doubt of the guilt of the accused, that it will interfere on the ground that the evidence does not support the verdict."

We find no merit in the defendant's contention that the People failed to prove his guilt beyond a reasonable doubt, or that his identification was based on improbable testimony.

██ ██ The defendant also contends that the court erred in not instructing the jury on the question of circumstantial evidence. The abstract contained two instructions which are marked refused. No other instructions were abstracted. A similar circumstance existed in the

339

case of People v. Donald, 29 Ill2d 283, 194 NE2d 227 (1963), and at page 287, the court stated:

> "However, no other instructions have been abstracted, and we have consistently held that where the abstract fails to include all instructions, both given and refused, alleged error concerning instructions will not be considered upon review. People v. Robinson, 27 Ill2d 298; People v. Woodruff, 9 Ill2d 429."

Consequently, we will not consider this alleged error.

We find no reversible error in the record, and the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.