THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERTO CAMPOS, Defendant-Appellant.

Second District    No. 2—85—0801

Opinion filed May 6, 1987.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, and Julius Lucius Echeles and Dennis M. Doherty, both of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

After a bench trial, the defendant, Roberto Campos, was found guilty of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse. The trial court sentenced the defendant to an extended term of 60 years in prison.

On appeal, the defendant raises five issues for review: (1) whether the defendant was proved guilty beyond a reasonable doubt; (2) whether the trial court failed to properly determine the competency of the minor complainant; (3) whether the defendant's right to cross-examine adverse witnesses was improperly curtailed; (4) whether an

extended-term sentence was improper because the same factor, complainant's age, was twice used to enhance the offense; and (5) whether the aggravated criminal sexual assault and aggravated criminal sexual abuse statutes are unconstitutional.

Dennis Bucksten was the complaining witness in this case. He testified that he was a member of the Big Brothers organization. Beginning in May 1984 he became the adult sponsor of the minor complainant in this action, Jerome Hermann, a/k/a Jay. In January 1985, Jay lived in North Chicago with his mother, Donna, and his 15-year-old sister, Margaret. On Saturday, January 26, 1985, Bucksten arrived at the Hermann residence at about 7 p.m. but found no one home. Mrs. Hermann worked Saturday nights. He went to the children's grandmother's home, but was told they were supposed to be at their apartment. Late that night he learned from their grandmother that Margaret and Jay had eventually returned home. The next afternoon Bucksten returned and demanded to know where Jay had been. On cross-examination, Bucksten revealed that Margaret and Jay had told him that they had been with a man called Joe at his place. Joe was subsequently identified as the defendant. They knew Joe, having met him on former occasions at the laundromat across the street. They told Bucksten they had been with Joe on other occasions. Jay also related that Joe would become angry if he did not agree to see him again. Bucksten subsequently phoned the North Chicago police.

Margaret Hermann testified that she was presently living with foster parents in Great Lakes. Previously she had lived with her mother and brother, Jay, in North Chicago. She knew a man named Joe and identified him as the defendant. She had met him before Christmas 1984 at a laundromat. She said defendant was with a heavyset lady and four children. She stated that she and Jay later saw defendant at an arcade. They became friendly and went to his home on Saturdays while their mother was at work and after Jay's Big Brother dropped him off. Margaret testified that on their third visit to Joe's apartment, Margaret asked Joe for some money to go downstairs and play the video games. Jay remained upstairs with defendant until Margaret returned one-half to one hour later. She said she called out before coming up since the door to Joe's apartment was locked. The two went to Joe's every Saturday until Dennis Bucksten stopped the visits. On cross-examination, Margaret said that they did not go every Saturday, but were at Joe's two to three Saturdays. Later she agreed that Jay was at Joe's on approximately 10 Saturdays. Jay told Margaret that when he was alone he would just talk or eat with defendant. He never told Margaret about any sexual abuse

or said that Joe threatened him to coerce him to continue coming to his apartment every Saturday. On cross-examination Margaret said that she had lied when she told the North Chicago police that Joe had told her to get undressed. She said she told the police such a lie because she "wanted [the defendant] to get in more trouble" because of what he supposedly did to her brother.

Jay Hermann stated that he was 11 years old and lived with his aunt and uncle in Alabama but had previously lived in North Chicago when his mother was living. He knew a man named Joe and identified him as the defendant. They had met at a laundromat with a chubby lady and some children. He saw the defendant again on the next Saturday with his sister, Margaret. Defendant gave Margaret money, and she went downstairs. Jay said that the defendant asked him to lie on the bed and that Jay undressed and complied.

On direct examination, Jay was given two anatomically correct dolls, one a mature male, and the other a juvenile male, on which he demonstrated how defendant lay on him and said that he had gotten a red hickey from the defendant. Defendant also was allegedly "tongue twist kissing" him. Jay said that the defendant's "dick" was hard and he wanted Jay to rub it. This episode ended when Margaret called from the base of the stairway, outside of the defendant's apartment, that she was coming back up. She had to call up because the entrance to the stairway was locked, and she had to be let in. When she called, Jay testified they both dressed and then let Margaret back in.

The two returned the next Saturday and Jay testified that the same thing happened. Additionally, after a repeat of the same acts, the defendant lay on Jay's back. Jay testified he "put his dick in my butt." On this occasion defendant asked Jay if he ever had "milk dripping." Jay said that he had "liquid come out dripping down his leg." Defendant wiped it off with his shirt. Jay stated he did not know what it was. When defendant got in the shower, naked, he asked Jay if he wanted his back scrubbed. Jay declined. Jay said he told Dennis Bucksten that he had been at Joe's on one Saturday subsequent to his having been instructed not to go back there. Jay testified that the defendant asked him if Jay loved him. At one time Jay had to "suck defendant's dick." Jay stated that the defendant did the same to him first.

On cross-examination, Jay related that at defendant's apartment, he had seen the boys and the chubby woman who had been with Joe at the laundromat. Jay estimated the amount of time he spent alone with defendant as 20 to 25 minutes the first Saturday and 30 to 40 minutes on other occasions. Jay estimated that he had been at defend-

ant's home more than three times and had always gone there with his sister, Margaret.

David Rockingham, Sr., a police detective, testified that Jay had told him that defendant had fondled and kissed him, rubbed his neck, and asked Jay to suck his penis, which Jay did. Defendant on another occasion got on top of Jay and tried to penetrate him. Jay told the officer he did not know if he succeeded, but he was in pain.

Officer Rockingham testified that, on February 5, 1985, accompanied by Detective Phelps, he went to defendant's apartment to serve a warrant on and to arrest the defendant. Defendant signed the acknowledgement and waiver of rights form. Upon arriving at the police station, the officers questioned the defendant about his relationship with Jay. Officer Rockingham left the room while Phelps spoke with defendant, then returned to the room after approximately 10 to 15 minutes. Defendant repeated his statement to Officer Rockingham with Officer Phelps still present. Officer Rockingham stated that defendant told him that Jay and his sister had visited defendant's apartment and that he had given Margaret money to go down below defendant's apartment to an arcade. Defendant stated that he had Jay sit on his lap, and he rubbed Jay's inner thighs and back. Later Margaret called him from below and the two left. On another occasion defendant gave Margaret money to go down and play the games and defendant went to bed with Jay. Defendant stated that he did not penetrate Jay "because God would punish him." Defendant told Officer Rockingham that there was a possibility that his penis had touched the crack of Jay's buttocks.

North Chicago police detective Johnie Phelps testified that he recalled receiving a phone call from Dennis Bucksten. He also served the warrant on defendant, with Officer Rockingham, on February 5, 1985, at defendant's home. After defendant was read his rights, he told Officer Phelps that he understood them and signed a waiver form. He was told that he was being investigated regarding his having had sex with 11-year-old Jay. Initially he told Officer Phelps that he only met Jay and Margaret once at the laundromat, then changed his story to three or four times. Defendant then stated that on one occasion he had given Margaret money to go downstairs to play some machines and then had Jay come sit on his lap when he began to rub Jay's inner thighs and back. When Margaret returned, the two youngsters left. On another occasion Jay was at defendant's home and took his clothes off. Defendant stated that he removed his clothing and got into bed. Jay got on top of defendant, and defendant began kissing him. Defendant said that he began thinking that this was wrong and

that God would punish him. He denied ever having anal sex with Jay but said that his penis may have touched the crack of Jay's buttocks.

For the defense, Chipper Saylor, nearly 11, took the stand. He lived with his mother, Janice Saylor, and three brothers. He met Margaret and Jay at the laundromat before Christmas. Chipper said that a black man had been "messing" with Jay. Defendant allegedly phoned the police, who came and took the black man away. Chipper saw Jay and Margaret at defendant's apartment. He said he had seen Jay "grabbing himself." Chipper said defendant laughed at Jay's behavior and that Chipper's mother told Margaret and Jay to get out. Referring to that incident, Chipper stated that neither the defendant nor Jay got undressed. Chipper Saylor stated he was with Roberto Campos "three or four weekends" after Christmas. Chipper testified that defendant would pick up him, his mother and brothers, at 7 or 8 a.m., at his home, take them to lunch, and return to defendant's home. On those weekends, Chipper stated that he never saw Margaret or Jay at defendant's home.

Defendant took the stand on his own behalf and acknowledged his acquaintanceship with the victim and the victim's sister, Margaret. He met them at the laundromat in December 1984. Later they came and knocked on defendant's door, wishing to play with the children of Janice Saylor, defendant's girlfriend. Jay and Margaret allegedly came in and went to the bedroom. Defendant said that he never undressed in front of Jay nor had Jay undress for him. He said that at all times he was on the sofa with Janice. The defendant stated that the first time the Hermann children were in his home, they chatted with the defendant, Janice, and Janice's children. Chipper and Donnie allegedly began to argue with Jay because Jay told Chipper that defendant was not his dad. Janice ordered them to leave. Jay supposedly called Janice a big fat bitch, and defendant told him that he should have respect for older people. Jay said he hated her, and defendant allegedly told them to leave immediately, but they refused. It was nearly midnight. The defendant testified that the Hermanns were never in his apartment with him alone. Defendant never touched any of the private parts of Jay's person or had anal intercourse with him, nor did he tell the police that his penis touched the crack of Jay's rectum or that he got into bed with Jay. On cross-examination, defendant informed the court that on weekends he was almost always with Janice and her family. Jay and Margaret were only at defendant's apartment once, defendant stated. Defendant opined that the Hermanns made up their stories because they had been ordered from defendant's home.

Janice Saylor testified that she had been dating defendant for four years. She had lived with defendant earlier, but at present each maintained their own household, although they spent a lot of time together. She had seen Jay and Margaret Hermann only twice, the first time at a laundromat on the Saturday after Thanksgiving 1984. Saylor said that a black man had been with Margaret, with "his hand all over the girl's dress." The police came and ordered the black man, Margaret, and Jay out of the laundromat. About one week before Christmas, defendant picked up Janice and her children, brought them to his home, and fixed them supper. Following the meal, Al and Donnie, Janice's sons, fell asleep. Defendant sent Chipper down to shut the door, and the Hermanns ran back in with him. They ran around and shouted. According to Saylor, they wanted Janice and her children to leave. Jay and Margaret began to fight with her children. Margaret allegedly left for about 1½ hours. Defendant never got undressed or went into the bedroom with Jay. Margaret returned and left with her brother after threatening, "Boy, you guys are really going to get it." Janice said that she and the children were at the defendant's apartment for four weekends after New Year's Day. Ms. Saylor testified that Jay and Margaret were not at defendant's apartment on those weekends after New Year's.

The trial court found the defendant guilty of the offenses of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse.

A sentencing hearing was held on September 9, 1985. No evidence in aggravation was presented by the prosecution. During sentencing, the trial court made the following statement:

"I find that pursuant to Chapter 38, Section 1005—5—3.2(b)(3)(i), that the Court may consider in determining whether or not a person is subject to an extended term of imprisonment, the age of the victim, and if it was under the age of twelve, which I find that it was.

I think that it is not only necessary to deter others from this type of conduct, but to protect the children in our society from Mr. Campos, that he be removed from society for as long a term of imprisonment as possible.

It is therefore the judgment of this Court that Mr. Campos be sentenced to a term of imprisonment in the Department of Corrections for 60 years."

The trial court sentenced Roberto Campos to an extended term of imprisonment of 60 years for the offense of aggravated criminal sexual assault.

■ We consider first the defendant's contention that he was not proved guilty beyond a reasonable doubt. The determination of the credibility of witnesses is left to the trier of fact. (*People v. Sanchez* (1982), 110 Ill. App. 3d 893; *People v. Lucien* (1982), 109 Ill. App. 3d 412.) The determination of the trier of fact will not be set aside on review unless so palpably contrary to the evidence or so unreasonable, improbable, or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Brown* (1984), 122 Ill. App. 3d 452; *People v. Walsh* (1980), 80 Ill. App. 3d 754.) The defendant argues that his conviction was based solely on the testimony of Jay Hermann. He contends that Jay's testimony was rife with inconsistencies, and the veracity of such testimony was questioned by the complainant himself on several occasions. The defendant points out that the testimony of one witness, if positive and credible, is sufficient to support a conviction. (*In re C.K.M.* (1985), 135 Ill. App. 3d 145; *People v. Barbour* (1982), 106 Ill. App. 3d 993.) However, he cites *People v. Coulson* (1958), 13 Ill. 2d 290, for the principle that numerous inconsistencies in testimony can result in reversal of a conviction. We note that *Coulson* involved an alleged robbery victim's testimony, contradicted by the defendants, wherein the victim testified in part that the four male defendants drove him to his house and allowed him to go in, unaccompanied, while they waited in the car for him to return. The court found such testimony to be completely implausible as contrary to the laws of nature and universal human experience. *People v. Coulson* (1958), 13 Ill. 2d 290.

■ Here no such fantastic or unbelievable testimony was presented by the victim. There were simply a number of instances on cross-examination where the victim's testimony was purportedly inconsistent with previous statements he had made. As mentioned, however, determinations of credibility are to be made by the trier of fact. Our reading of the record indicates no fatal inconsistencies are to be found in the victim's testimony. We observe that the inconsistencies emphasized by the defendant primarily concern the 11-year-old victim's testimony as he grew increasingly agitated upon extensive cross-examination. The credence to be granted victim's answers, given his mental state at certain points of the cross-examination, is uniquely the province of the trier of fact. We therefore find that the trial judge properly determined the evidence sufficient to convict the defendant.

Further, we find that substantial corroboration did exist to support the victim's contentions in the testimony of the arresting officers, Phelps and Rockingham. Both officers testified that each was

told separately by the defendant, after he had signed a waiver of his rights, that he had been alone with the victim, had been undressed or partially clothed, and admitted to having placed his penis in the crack of victim's rectum. These statements were subsequently denied by the defendant.

The defendant next contends that the trial court erred by failing to properly assess the competency of the minor victim as a witness. The defendant argues that the court has an affirmative obligation to conduct an inquiry into the competency of any witness by examining the child's intelligence, understanding, and moral sense, prior to the witness being allowed to testify (*People v. Crowe* (1945), 390 Ill. 294; *People v. Ford* (1985), 139 Ill. App. 3d 894; *People v. Hunter* (1984), 129 Ill. App. 3d 262), and contends that no inquiry was made here.

██ ■ However, this case was tried to a judge, not a jury. A trial judge may determine a witness' competency either by preliminary inquiry or by observing the witness' demeanor and ability to testify *during* the trial. (*People v. Edwards* (1973), 55 Ill. 2d 25; *People v. Ford* (1985), 139 Ill. App. 3d 894; *People v. Luigs* (1981), 96 Ill. App. 3d 700.) The trial judge is charged with the responsibility to determine if the witness is sufficiently mature to (1) receive correct impressions from his senses; (2) recollect these impressions; (3) understand questions and narrate answers intelligently; and (4) appreciate the moral duty to tell the truth. *People v. Jackson* (1971), 3 Ill. App. 3d 303.

■ The record here indicates that the prosecutor conducted certain preliminary questioning of the witness prior to any examination as to the facts of this case. Regarding the first three factors mentioned above, the judge acts properly in assessing the witness' competency by observing his actual testimony. With regard to the complainant's appreciation of the moral duty to tell the truth, both the prosecutor and the defense counsel specifically queried the witness as to his ability to distinguish between honesty and dishonesty. The trial court's determination of the competency of a witness will not be overturned absent a manifest abuse of discretion. (*People v. Ford* (1985), 139 Ill. App. 3d 894.) We find that the trial court properly exercised its discretion regarding the competency of the 11-year-old victim in this matter.

The defendant also argues that the scope of his cross-examination of the victim was improperly limited. The defendant contends he should have been allowed to inquire into the victim's knowledge of sexual activity prior to his relationship with the defendant, apparently to show an ability to fabricate all of his testimony about the sexual

acts perpetrated by the defendant. But prior to the defendant's cross-examination, the State moved to bar cross-examination of the victim regarding any prior sexual activity. The State based its motion on the statutory inadmissibility of certain evidence under the "rape shield law." (Ill. Rev. Stat. 1985, ch. 38, par. 115—7.) The trial court granted the State's motion to exclude any such evidence. Subsection (a) of that statute reads:

"In prosecutions for aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse or criminal sexual abuse, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." Ill. Rev. Stat. 1985, ch. 38, par. 115—7a.

During the course of cross-examination of the victim, the defendant succeeded in asking several questions of the victim regarding his knowledge of sex prior to his encounters with the defendant, to which the victim responded that he had no knowledge. When defense counsel continued to pursue the matter, the court determined that such inquiry was improper under its previous ruling as to prior sexual activity of the victim and also found such questioning to be irrelevant.

■■ ■ The sixth amendment to the United States Constitution provides in part: "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with witnesses against him *** [and] to have the Assistance of Counsel for his defence." (U.S. Const., amend. VI.) The sixth amendment confrontation clause ensures the defendant the right to cross-examine all adverse witnesses, a necessary right for a fair trial. (*Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011; *Alford v. United States* (1930), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218.) The essential aim of this confrontation provision is to ensure the "integrity of the fact-finding process." (*Berger v. California* (1969), 393 U.S. 314, 315, 21 L. Ed. 2d 508, 510, 89 S. Ct. 540, 541.) The defendant correctly points out that he is entitled to present relevant evidence (*People v. Molsby* (1978), 66 Ill. App. 3d 647; *People v. Durr* (1978), 58 Ill. App. 3d 525) and to fully cross-examine to show bias, interest, or motive (*People v. Triplett* (1985), 108 Ill. 2d 463; *People v. Feathers* (1985), 134 Ill. App. 3d 1060). However, the right to cross-examine does not extend to irrelevant matters with little or no probative value. There was no showing by the defendant that inquiry into the victim's prior knowledge of sex would serve to demonstrate any interest, bias, or motive to falsely testify.

■■ ■ Regardless of whether or not the trial court's rulings were

proper, the court's restriction of the scope of cross-examination rises to the level of reversible error only if a defendant manifestly suffered prejudice as a result thereof. (*People v. Crosser* (1983), 117 Ill. App. 3d 24; *People v. Buford* (1982), 110 Ill. App. 3d 46.) We do not find that the defendant was substantially prejudiced by the trial court's ruling on the issue of marginal relevance. This is particularly so where the issue regarding material involving previous sexual activity or reputation had been specifically addressed by motion, and the court had a chance to examine the evidence. The court properly acted, mindful of the statutory mandate of section 115—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—7), to restrict cross-examination to relevant matters and to avoid prohibited excursions by defense counsel into testimony of past experiences that could be highly prejudicial and forbidden by statute.

The defendant contends that the aggravated criminal sexual assault and aggravated criminal sexual abuse statutes are unconstitutional and as authority for this proposition, cites the opinion of the circuit court of Marion County in People v. Haywood, No. 85 CF 29. Defendant also attempts, in contravention of Supreme Court Rule 341, to interject in his reply brief potentially new argument and authority not a part of the record and not originally raised in his initial brief (103 Ill. 2d R. 341(g)), by also referring to recent circuit court decisions in Fayette County.[1] In the event that the Fayette County decisions do in fact raise any new material or argument not found in the defendant's initial brief, we find that any new points raised for the first time by the reply brief will not be considered (*Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348; *Resudek v. Sberna* (1985), 132 Ill. App. 3d 783), irrespective of whether attempted new material raises constitutional questions (*Hah v. Stackler* (1978), 66 Ill. App. 3d 947). In reaching this conclusion, we are aware that the constitutionality of certain aspects of the criminal sexual assault and sex abuse statutes have been previously challenged in the courts and the constitutionality upheld against these challenges. (See, *e.g.*, *People v. Bartay* (1986), 150 Ill. App. 3d 130; *People v. Chitwood* (1986), 148 Ill. App. 3d 730; *People v. Burmeister* (1986), 147 Ill. App. 3d 218; *People v. Hope* (1986), 142 Ill. App. 3d 171.) Our review of defendant's constitutional challenge is therefore restricted to those matters raised in his initial brief.

---

[1]People v. Kenneth E. Rhodes, Fayette County, Illinois, No. 85 CF 64; People v. Donald R. Russell, Fayette County, Illinois, No. 85 CF 54; People v. Robert Allen Garland, Fayette County, Illinois, No. 85 CF 47.

Defendant's argument consists wholly of his adoption of the circuit court's reasoning in Haywood. However, the Haywood decision addressed several specific aspects of the criminal sexual assault statutes. The court in Haywood focused on section 12—13(a)(1) requiring "use of force," its definitional component in section 12—12(d) defining force as "use of force or violence," and the necessary attendant concept of consent, and secondarily upon sections 12—14(a)(1) and (a)(2) setting forth as aggravating factors the display of "a dangerous weapon" or the fact of a "bodily harm to the victim." In the present case, the defendant was charged under a completely separate provision of the aggravated criminal sexual assault statute and also charged with aggravated criminal sexual abuse which was not the basis of any of the charges in Haywood. Defendant was charged with aggravated criminal sexual assault under section 12—14, subsection (b)(1), which imposes liability if "the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed" (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)), and with aggravated criminal sexual abuse under section 12—16, subsection (c)(1), which finds the accused liable for aggravated criminal sexual abuse if "the accused was 17 years of age or over and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed" (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)).

There is no requirement of force, bodily harm, or issue of consent in those provisions under which the defendant was charged here. The defendant here, therefore, is not asserting that the offending portions of the criminal sexual assault and abuse in the Haywood case had any direct impact upon him in this case. In an attempt to bring the present case within the challenged constitutionality of the statute, defendant contends that the statute as a whole is overly broad.

The general rule in Illinois is that a person to whom a statute may be constitutionally applied cannot contest the constitutionality of the statute on the ground that others in a different context may be unconstitutionally affected in its application. (*People v. Holder* (1983), 96 Ill. 2d 444, *on remand* (1983), 119 Ill. App. 3d 366, *appeal denied* (1984), 96 Ill. 2d 569, *cert. denied* (1984), 467 U.S. 1241, 82 L. Ed. 2d 820, 104 S. Ct. 3511.) A person lacks standing to attack the constitutionality of a statute unless he is directly affected by the alleged unconstitutionality. (*People v. Wagner* (1982), 89 Ill. 2d 308.) Here, the defendant is not within that class of persons accused under this statute that would be directly affected by the statute's alleged offending provisions identified in Haywood.

■■ The overbreadth doctrine is an exception to this general rule of standing, but the doctrine is applicable only to challenge statutes that are alleged to inhibit the exercise of expressive or associational rights protected by the first amendment. (*People v. Holder* (1983), 96 Ill. 2d 444, *on remand* (1983), 119 Ill. App. 3d 366, *appeal denied* (1984), 96 Ill. 2d 569, *cert. denied* (1984), 467 U.S. 1241, 82 L. Ed. 2d 820, 104 S. Ct. 3511; *People v. Garrison* (1980), 82 Ill. 2d 444.) Neither defendant's expressive nor associational rights are here implicated. We therefore find that the defendant lacked standing to bring a challenge to the constitutionality of these statutes.

■■ Finally, the defendant argues that the imposition of an extended sentence was improper here as the victim's age was twice used to enhance his possible punishment for his offenses. Although the State argues that the defendant waived this argument by failing to raise it at the sentencing hearing, we elect to consider such alleged error as "plain error" affecting substantial rights of the defendant. Under the aggravated criminal sexual assault and aggravated criminal sexual abuse statutes, the defendant could be charged with a Class X felony based upon the victim's age, which under the statute had to be less than 13 years of age. In sentencing the defendant, the trial court explicitly relied upon the victim's age as a factor in aggravation of the offense pursuant to section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(3)(i)), a section which allows for an extended-term sentence greater than that for the underlying offense alone. The rule in this area is clear, *i.e.*, that the trial court may not rely upon a factor inherent in an offense also as an aggravating factor at sentencing, thereby causing a "double enhancement" of the allowable punishment for an offense. See, *e.g.*, *People v. Conover* (1981), 84 Ill. 2d 400; *People v. Davis* (1984), 121 Ill. App. 3d 916; *People v. Spearman* (1982), 108 Ill. App. 3d 237.

The State acknowledges this principle but contends that certain exceptions have been carved out of this rule. In *People v. Williams* (1986), 142 Ill. App. 3d 266, the court held that in a prosecution for cruelty to a child, the court could consider the age of the victim, 18 months in that case, as an aggravating factor under section 5—5—3.2(b)(3)(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(3)(i)). Section 5—5—3.2(b)(3)(i) lists, as an aggravating factor, any felony committed against someone under 12 years of age. The court in *Williams* rejected the defendant's argument that because most offenses of cruelty to a child involve children under 12 years of age, the legislature must have considered that factor when establishing the penalties for the offense and it would there-

fore be improper to again consider this factor at sentencing. (*People v. Williams* (1986), 142 Ill. App. 3d 266.) The *Williams* court relied upon *People v. Brewer* (1984), 127 Ill. App. 3d 306, to find that the *Conover* rule could not be inflexibly applied; that the extreme youth of the victim could be considered as an aggravating factor in sentencing. The *Williams* court stated:

"As in *Brewer*, we believe that the extreme youth of Jeremy Jones presents an additional consideration not necessarily implicit in every offense of cruelty to a child. Interpreting the term 'child' in the cruelty to children statute as one who is under the age of 18 the legislature, in enacting section 5—5—3.2(b)(3)(i), determined that cruelty to a child under the age of 12 deserves a greater penalty and that it should be left to the court's discretion whether or not to consider this factor in imposing sentence." (*People v. Williams* (1986), 142 Ill. App. 3d 266, 270.)

However, *Williams* and *Brewer* are both distinguishable from the present case. In *Brewer*, application of the aggravating factor of felonies committed against minors less than 13 years old did not constitute double enhancement because that factor did not apply to the entire class of persons protected by the indecent liberties with a child statute for that statute punished offenses against a child under the age of 16. (*People v. Brewer* (1984), 127 Ill. App. 3d 306.) Therefore, it did not follow that the legislature considered implicit in the indecent liberties with a child statute that the victims would be children under 12 years of age. In *Williams*, where a child was deemed to be any person under the age of 18, the discrepancy between the protected persons under the cruelty to a child statute and the class of those under 12 in section 5—5—3.2(b)(3)(i) was even greater.

But in the present case, we face a much closer fit between the criminal sexual assault and child abuse provisions imposing felony liability where the victim is under 13 years of age, and the existence of an aggravating factor where a felony is perpetrated on a person under 12. We find the holding of *People v. Powell* (1985), 139 Ill. App. 3d 701, to be instructive in this regard. Although in *Powell* the court determined that the defendant's sentence was properly enhanced owing to the fact that the offense was accompanied by exceptionally brutal and heinous behavior indicating wanton cruelty by the defendant, the court did also state:

"In sentencing defendant for aggravated battery to a child, the court could not generally enhance the sentence because the victim was a child under 13 years of age, since that factor is an

element of the offense ***." (*People v. Powell* (1985), 139 Ill. App. 3d 701, 710.)

The applicable offense in *Powell*, aggravated battery to a child, imposed liability where, as in the present case under the applicable statutes, the victim was under 13 years of age at the time of the offense. (See Ill. Rev. Stat. 1985, ch. 38, par. 12—4.3.) Although there still exists a one-year discrepancy between that class of persons protected under the aggravating factor statute and the aggravated criminal sexual assault and aggravated criminal sexual abuse statutes, it is not materially significant to the extent that double enhancement can be permitted. The more reasonable inference to be drawn here is that because these aggravated sex offenses, if based on age, must involve a child less than 13, the legislature had likely already considered that factor when establishing the penalty for these offenses.

Accordingly, the judgment of conviction is affirmed, the sentence vacated, and this cause remanded to the circuit court of Lake County for resentencing.

Affirmed and remanded with directions.

HOPF and DUNN, JJ., concur.