THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRANCE G. WARREN, Defendant-Appellant.

Third District   No. 3—87—0045

Opinion filed November 4, 1987.

Steven Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Larry VanDerSnick, State's Attorney, of Cambridge (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendant, Terrance Warren, was indicted for two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)). The victims of the alleged offenses were defendant's two nephews, ages six and four. Following a bench trial, the court found defendant guilty of the count respecting the six-year-old and not guilty of the count charging the same offense against the four-year-old. Defendant was sentenced to serve six years in the Department of Corrections.

Defendant appeals from his conviction on the ground that the trial court erred in granting the State's motion *in limine* to preclude evidence of the victims' sexual activity with a cousin. Because the suffi-

ciency of the evidence to convict is not directly in issue, the facts of this case may be briefly stated. We shall refer to the victim as "J.H." (the six-year-old) and "his brother" (the four-year-old).

At trial, the victims' paternal grandmother testified that she was babysitting the children in late February 1986, and reading them a book entitled, "It's O.K. to Say No!" The book contained stories about personal safety for children. One of the stories concerned an uncle who had touched a little girl in a way that made her uncomfortable. The grandmother said that when she read this, J.H. "popped up" and exclaimed that that was what Uncle Terry and Uncle Doug did all the time. Upon further inquiry, J.H. told her that the uncles had sucked his "peepee," punched him in the stomach and done other bad things to him. J.H.'s brother told her that the same things were done to him.

The matter was reported to the Kewanee police for investigation of the charges. Using anatomically correct dolls, Department of Children and Family Services (DCFS) investigator Doug Klein asked J.H. to demonstrate what had been done to him. J.H. indicated that, in addition to sucking on J.H.'s penis, defendant had penetrated him anally. J.H. said that "it hurt like a nail." According to Officer Joe Cervantez, who accompanied Klein during the interview, J.H. also stated that on one occasion he had urinated in defendant's mouth and on another defendant had rubbed his penis on J.H.'s penis. In a separate interview, his brother denied that he had been sexually molested by either of his uncles.

During the grand jury investigation of the charges, testimony was elicited from defendant, his mother and the victims' father concerning the victims' exposure to sexual conduct. According to these witnesses, a seven-year-old cousin, Timmy, had pulled his pants down and told J.H. to look at his penis. The conduct was reported to Timmy's mother, but Timmy denied any wrongdoing. According to defendant, the children were also caught together in the bedroom with no clothes on. Prior to trial, the State moved to bar presentation of J.H.'s exposure to sexual conduct with his cousin pursuant to the rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—7). Relevant portions of the transcript of the grand jury proceedings were attached to the motion as an exhibit. Over defendant's objection, the motion was granted.

At trial, J.H. was determined by the court to be competent to testify. He testified that his uncles Terry and Doug sucked his "peepee" and his brother's while the children were being babysat at the Warren home and at their own home. He also stated that defendant had put his "peepee" in J.H.'s "butt" and that it felt "weird." J.H. denied that he had told anyone that he had urinated in defendant's mouth or that

he had rubbed penises with defendant. J.H.'s brother was not called to testify in court.

It was further established that J.H. was withdrawn during the period prior to February 1986. He experienced stomach aches and would not speak at kindergarten. Both children had suffered from nightmares. Counselling was provided as a result of the report of molestation, and by the time of trial it appears that both children were responding normally.

Defendant initially denied any wrongdoing. However, following a polygraph examination, defendant agreed to give a statement to the police acknowledging that he had placed his mouth on the penises of both children. After his arrest, defendant retracted the statement and refused to sign a typed copy of it. He testified at trial that he had been intimidated by the polygrapher, told what to say by the police and had not read or understood his rights prior to making admissions. Defendant theorized at trial that the accusations against him were fabricated by the victims' father and their paternal grandmother in retaliation for their father's failed marriage to defendant's sister. Defendant testified that J.H. did not like him because he would discipline him when the children visited their maternal grandparents.

Several character witnesses testified on defendant's behalf, as did defendant's mother and his former employer.

At the conclusion of the trial, as aforesaid, the court found that the State's evidence supported the charge with respect to J.H., but that the evidence did not prove beyond a reasonable doubt that defendant had committed an offense against J.H.'s brother. The court found mitigating factors sufficient to justify imposition of the six-year minimum sentence of imprisonment for the Class X felony.

In this appeal, defendant posits that the rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—7) was enacted to prevent adult sexual assault victims from being harassed or humiliated by a cross-examiner's delving into personal aspects of their lives which are irrelevant to the matter being tried and are of, at best, only marginal probative value. Defendant contends that the purpose of the rape shield statute is not served by applying it in a case, such as this, where the victim's youth alone calls into question his ability to separate truth from fantasy. By allowing the State's motion *in limine*, defendant's argument continues, the court deprived defendant of his constitutional right to confront and effectively cross-examine the youthful witness against him.

■■ Initially, we note a defendant's right to cross-examine witnesses against him is not absolute. However, even though the right to

confront and cross-examine witnesses must at times "bow to accommodate other legitimate interests in the criminal trial process," our Supreme Court has cautioned that "its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." (*Chambers v. Mississippi* (1973), 410 U.S. 284, 295, 35 L. Ed. 2d 297, 309, 93 S. Ct. 1038, 1046, quoting *Berger v. California* (1969), 393 U.S. 314, 315, 21 L. Ed. 2d 508, 510, 89 S. Ct. 540, 541; *Summitt v. Nevada* (1985), 101 Nev. 159, 697 P.2d 1374; *People v. Foggy* (1986), 149 Ill. App. 3d 599, 500 N.E.2d 1026, *appeal allowed* (1987), 113 Ill. 2d 579.) Thus, where the legislature enacts a statutory privilege of confidentiality or otherwise passes legislation for the protection of privacy interests, the State's public policy interest must be cautiously balanced against the defendant's legitimate interests in disclosure of the protected matter. *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Foggy* (1986), 149 Ill. App. 3d 599, 500 N.E.2d 1026.

The statute here at issue encompasses this case and provides no exception on its face for the circumstances here presented: "In prosecutions for aggravated criminal sexual assault, *** the prior sexual activity *** of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a) (in pertinent part).) The constitutionality of the legislation is not here challenged, having been upheld in prior decisions of this court. (See *People v. Bachman* (1981), 92 Ill. App. 3d 419, 414 N.E.2d 1369, 1374 (and cases cited therein).) Rather, defendant contends that the statute is unconstitutional as applied in this case.

The arguments advanced by defendant here were recently considered in *People v. Campos* (1987), 155 Ill. App. 3d 348, 507 N.E.2d 1342. There, an 11-year-old victim testified to oral and anal sexual activity with the defendant. Defense counsel proceeded during cross-examination to question the victim about his prior knowledge of sex, and the victim denied any such prior knowledge. The trial court ruled that the inquiry was irrelevant and violated a prior order barring such questioning pursuant to the rape shield statute. On appeal, the court acknowledged the conflict created between a defendant's constitutional rights and strict application of the rape shield statute when a showing is made by the defendant that such inquiry is relevant and "that inquiry into the victim's prior knowledge of sex would serve to demonstrate any interest, bias, or motive to falsely testify." Without determining whether the trial court's rulings based on the rape shield

statute were proper, the court on review found that defendant had failed to demonstrate that he was substantially prejudiced by the court's restriction of counsel's inquiry during cross-examination. Accordingly, the court found no reversible error in the trial court's rulings. 155 Ill. App. 3d at 359, 507 N.E.2d at 1349.

In this case, there was some indication during the grand jury proceedings that the youthful victim had been exposed to other naked or partially naked children, but no testimony or other evidence that J.H. had experienced or witnessed sexual activity of any kind with anyone other than Terry and Doug. J.H.'s dislike for the defendant was amply probed during the course of the trial, and this factor did not significantly impair his credibility. Nor do we find J.H.'s testimony significantly impeached by his denial of having told officer Cervantez that he had urinated in defendant's mouth or rubbed penises with him. J.H. testified clearly and consistently about the nature of defendant's acts of fellatio and anal sex with him, although he could not specify the number of times he had been attacked or when the acts had occurred.

■ The inconsistencies in J.H.'s testimony are to be expected from a six-year-old witness. They reflect a child's extremely literal interpretation of the questions asked of him and his limited life experience. Such inconsistencies as appear in the record of J.H.'s testimony are not so egregious or unusual as to indicate that J.H. fabricated the charges against defendant or merely recited stories suggested to him by his father or paternal grandmother.

Defendant relies on several decisions from foreign jurisdictions in which courts have held that the proscriptions of their rape shield statutes must fall where a showing is made by defendant that the youthful victim's prior sexual knowledge or conduct is relevant and its probative value outweighs its prejudicial effect. (See, *e.g., State v. Howard* (1981), 121 N.H. 53, 426 A.2d 457; *State v. Carver* (1984), 37 Wash. App. 122, 678 P.2d 842; *Summitt v. Nevada* (1985), 101 Nev. 159, 697 P.2d 1374; *Commonwealth v. Black* (1985), 337 Pa. Super. 548, 487 A.2d 396.) We have reviewed these cases and others in which the admissibility of evidence of a victim's prior sexual conduct was at issue and find that they do not support defendant's position in this appeal. In each case in which the courts ruled that inquiry into the victim's sexual history may be warranted, the defendant had made some preliminary showing that the victim's prior experience was similar to the sexual conduct for which defendant had been tried. On review, the courts granted a remand for a hearing to determine the admissibility of such evidence. And, where defendant had made no offer of proof at trial, but demonstrated that he had a "reasonable suspicion and a good

faith basis" for such inquiry, remand for a hearing on relevancy has been granted as well. *Commonwealth v. Ruffen* (1987), 399 Mass. 811, 507 N.E.2d 684.

■ In this appeal, defendant requests that we remand his case for a hearing to determine whether J.H. had any prior exposure or sexual experience similar to fellatio and anal intercourse. We find no facts in the case before us that could compel a departure from the plain language of the Illinois statute.

In this case defendant has not made a threshold showing that J.H. was exposed to any prior sexual conduct whatsoever. The fact that he may have viewed the naked bodies of other children or, indeed, adults in his home is not sufficient to presume that he gained any more knowledge about sexual activity than he could have observed from bathing himself. We are not prepared to equate mere "nakedness" as "sexual experience." We find that the record before us falls far short of establishing even a reasonable suspicion or good-faith basis for subjecting J.H. to inquiry into any prior sexual experience. On the basis of the record it appears that what defendant proposes is no less than a trial after a trial of purely collateral matters. Under similar circumstances, courts have not hesitated to deny a defendant's request for further proceedings to determine whether an exception to the rape shield statute might apply. See, *e.g., People v. Campos* (1987), 155 Ill. App. 3d 348, 507 N.E.2d 1342; *Commonwealth v. Samuels* (1986), 354 Pa. Super. 128, 511 A.2d 221; *State v. Dukette* (1986), 127 N.H. 540, 506 A.2d 699; *Commonwealth v. Baldwin* (1985), 348 Pa. Super. 368, 502 A.2d 253.

■ Having heard the State's motion, having received into evidence the foundation for the motion and having heard defendant's arguments in opposition to the motion, the trial court correctly concluded that the facts of this case did not warrant further inquiry into the sexual knowledge or experience of the child complainant. (See *People v. Campos* (1987), 155 Ill. App. 3d 348, 507 N.E.2d 1342.) We hold that the trial court did not abuse its discretion. The trial court's ruling did not diminish defendant's constitutional right of cross-examination to any appreciable degree, and further proceedings would serve no useful purpose.

Accordingly, we affirm defendant's conviction.

Affirmed.

WOMBACHER and HEIPLE, JJ., concur.