THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH BERNARD BRINK, Defendant-Appellant.

Fourth District   No. 4—97—0403

Opinion filed January 22, 1998.

COOK, J., specially concurring.

R. John Alvarez, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On January 13, 1997, following a bench trial in the circuit court of Sangamon County, defendant, Joseph Bernard Brink, was convicted of aggravated criminal sexual assault in violation of section 12—14(b)(i) of the Criminal Code of 1961 (720 ILCS 5/12—14(b)(i) (West 1996)). He was subsequently sentenced to a term of 12 years' imprisonment.

On appeal, defendant maintains (1) the evidence was insufficient to establish his guilt of aggravated criminal sexual assault beyond a reasonable doubt; (2) the trial court erred in allowing into evidence the hearsay statements of T.B. to investigators in violation of section 115—10(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10(b) (West 1996)); (3) the trial court abused its discretion in denying his motion for a new trial; and (4) the trial court abused its discretion in sentencing him to 12 years' imprisonment. We affirm.

On February 8, 1996, defendant was charged by information as follows:

> "[B]etween Jan[uary] 1 and May 8, [1995], *** [defendant] committed the offense of aggravated criminal sexual assault, in that said defendant who was 17 years of age or older, knowingly committed an act of sexual penetration with [T.B.], who was under 13 years of age when the act was committed, in that said defendant placed his penis in the mouth of [T.B.]."

At trial, Richard S. Weaver, an investigator with the Illinois State Police, testified that in May 1995, he was assigned to investigate an allegation that T.B. was sexually assaulted by defendant, who is her father. He said the child was six years old and was residing with defendant, her mother, two brothers, a sister, a family friend, and another child. Weaver stated T.B. told him, "[m]y dad makes me suck his privates." He said she stated he does this when her mother is away, usually playing "Bingo," and it occurs in either the bedroom or bathroom. He said T.B. gave details about how the acts occurred and stated her father held her head during the act and would watch down the hall to make sure no one was coming. He said the child appeared "very calm" and said she had not told anyone previously because she was afraid. Weaver stated the report to the police came through a disclosure that was made at school.

Weaver further testified that following his interview with T.B. he conducted an interview with defendant concerning T.B.'s allegations. He testified (1) defendant was angry and denied any sexual contact with T.B.; (2) defendant claimed T.B. had probably observed him and his wife in sexual acts and that T.B was making it up; and (3) defen-

dant described a prior occasion when he had awakened to find his son, Allen, holding defendant's penis.

Weaver described a second interview with defendant several days later, as follows: (1) defendant told Weaver of an occasion where he awakened with an erection, thought it was his wife or his son Allen, and when he looked he realized it was T.B.; (2) defendant said T.B. was on the bed beside him, reaching across and squeezing his penis, and he probably ejaculated; (3) defendant said he had been reluctant to tell Weaver about this incident during the earlier interview because his wife and friends had teased him about a similar incident with Allen.

On cross-examination, Weaver testified he interviewed T.B.'s mother Linda Brink, her brother Allen, her sister Candice, and Ashley Swalley, the daughter of Twyla Falkner, who was living with the Brinks. He said he did not interview Twyla. Weaver stated those interviews did not aid in his investigation of defendant.

Weaver further testified defendant cooperated with the investigation and appeared voluntarily at the investigator's office. He said defendant initially became angry at those allegations but cooperated with the interview. Weaver stated defendant offered, as an explanation, that he and his wife did not wear any clothing while sleeping and T.B. had seen him naked when he was taking a shower. Defendant also mentioned to Weaver that T.B. had walked in on at least two occasions when he and his wife were engaging in sexual intercourse, including when his wife was performing fellatio, and T.B. may have seen him ejaculate.

Weaver admitted there were no physical tests conducted to support T.B.'s allegations, and he did not obtain corroborating evidence from other witnesses. On redirect examination, Weaver testified that in his experience there are no medical examinations to determine whether a person has experienced oral sex.

Cynthia Robbins, an investigator for the Department of Children and Family Services (DCFS), testified she was involved in an interview of T.B. on May 11, 1995, concerning a sexual abuse allegation and two interviews with the defendant. Her testimony completely corroborated that of Officer Weaver with regard to T.B.'s allegations and defendant's denial. She admitted on cross-examination, however, that she reviewed Weaver's report in preparation for trial and did not prepare a separate report of her own.

Robbins further testified the initial interview with T.B. took place at her school, in a break room used by the janitors, rather than at the child advocacy center. She said the investigators did not want to alert T.B.'s parents at that time.

Finally, T.B. testified, describing the acts she alleged happened with her father. She stated (1) she and defendant were doing "something yucky" in the bathroom; (2) she knew the name of that part of defendant's body was "very yucky," but she would not say the name of it other than it started with the letter "p"; (3) the part on his body was "where he zips his pants"; (4) defendant made her suck on it with her mouth; (5) this happened "lots of times"; (6) she sucked it "until he had to go to the bathroom"; (7) he would then go to the toilet and she would run into the front room; and (8) she did not tell her mother because she was afraid she might get into trouble.

On cross-examination, T.B. stated she, her brothers, and her sister would sometimes get into bed with her parents. She said she had never seen her parents naked and her mother wore a nightshirt to bed. She could not remember what her father wore to bed.

At the conclusion of the State's case, defendant made a motion for a directed verdict, which was denied. The court also ruled the testimony of Weaver and Robbins concerning T.B.'s statements were admissible pursuant to section 115—10 of the Code.

Defendant called Carol Greenwood, who was T.B.'s teacher at the time she made the initial allegations. Greenwood testified regarding T.B.'s reputation for truthfulness and honesty. She stated that initially T.B. did not have a reputation for being truthful and honest, but she did by the time she left the class. Greenwood also testified she wrote in a report to DCFS, "I feel as a result of my experience with [T.B.], that I cannot trust her to be truthful and honest in any situation."

On cross-examination, Greenwood testified that the basis of her report was her personal experiences with T.B. and she did not discuss her reputation with anyone else. The trial court granted the State's motion to strike all of Greenwood's testimony with reference to T.B.'s reputation because it was based solely on her own opinion as to the child's veracity.

Defendant did not testify. After hearing arguments, the court found the State had met its burden of proof and found defendant guilty of the offense as charged.

■ Defendant argues on appeal the State did not prove his guilt beyond a reasonable doubt. The standard of review in questions concerning the sufficiency of the evidence is as follows.

In *People v. Oaks*, 169 Ill. 2d 409, 457-58, 662 N.E.2d 1328, 1349-50 (1996), the Supreme Court of Illinois again set forth the standard of review of questions concerning the sufficiency of evidence as follows:

"[I]t is not the function of the reviewing court to retry a defendant when considering a challenge to the sufficiency of the evi-

dence of his guilt. [Citations.] Rather, determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. [Citations.] In considering a defendant's challenge to the sufficiency of the evidence, the relevant question is whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

The foregoing standard gives full consideration " 'to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *People v. Campbell*, 146 Ill. 2d 363, 375, 586 N.E.2d 1261, 1266 (1992), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Therefore, a reviewing court "will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *Campbell*, 146 Ill. 2d at 375, 586 N.E.2d at 1266. Contrary to defendant's assertions, a special standard of review for sex offense cases no longer exists. *People v. Schott*, 145 Ill. 2d 188, 202, 582 N.E.2d 690, 696-97 (1991).

■ Defendant argues T.B.'s testimony was uncorroborated by physical evidence or evidence of witnesses. However, the Supreme Court of Illinois has held the uncorroborated testimony of even one witness, including the victim, that is contrary to defendant's testimony is sufficient to convict. *People v. Novotny*, 41 Ill. 2d 401, 411, 244 N.E.2d 182, 188 (1968); *People v. Booker*, 224 Ill. App. 3d 542, 550, 585 N.E.2d 1274, 1280 (1992). In criminal sexual assault cases, the victim is typically the only witness to the crime other than the perpetrator. Any shortcomings in the victim's testimony do not affect the credibility to be given the testimony but go only to its weight. *Booker*, 224 Ill. App. 3d at 550, 585 N.E.2d at 1280.

When viewed in the light most favorable to the prosecution, the record contains adequate evidence to convict defendant. T.B. gave details of the sexual assaults that a child would not know absent experiencing them, including that defendant held her head and she had to suck defendant's penis until he had to go to the bathroom. Defendant argues the case turns on the credibility of two witnesses, T.B. and himself. However, defendant did not testify at trial and the only evidence of his denials was produced by Weaver and Robbins. They both testified defendant's statements were inconsistent in that first, he denied any sexual contact with T.B., and second, he stated T.B. touched his penis until he ejaculated. His explanation for the in-

consistency was that he was afraid of being teased, as his wife and friends had done when he experienced a similar incident with one of his sons. The inconsistency between defendant's two statements and his incredible explanation for this inconsistency are sufficient to discredit defendant's statements.

■ Defendant next argues the trial court improperly struck the testimony of Greenwood. Defendant attempted to impeach T.B.'s testimony by showing her reputation for truth and veracity was bad. He notes that where the evidence establishes a bad reputation for truth and veracity, the trier of fact may disregard a witness' uncorroborated testimony. *Hill v. Montgomery*, 184 Ill. 220, 225, 56 N.E. 320, 321 (1900).

In *People v. West*, 158 Ill. 2d 155, 162-63, 632 N.E.2d 1004, 1008 (1994), the court stated the proper procedure to be used to impeach a witness is to ask the witness whether he knows the general reputation for truthfulness in the community. Here, Greenwood was asked about T.B.'s reputation, but she gave an equivocal answer. Moreover, she stated the basis of her report to DCFS was her "personal experiences" and she did not discuss T.B.'s reputation with anyone else. Since Greenwood's opinion regarding T.B.'s truthfulness was based upon her personal experiences and not on T.B.'s reputation for truthfulness, the trial court properly struck her testimony.

Finally, defendant argues the trial court erred in allowing into evidence the hearsay statements of T.B. to Weaver and Robbins with reference to her allegations without conducting a hearing to determine the reliability of those statements.

■ Section 115—10(b) of the Code provides that in a prosecution for a sexual act perpetrated against a child under age 13, testimony of the out-of-court statements of such child, describing any complaint, matter, or detail that goes to an element of the offense, shall be admitted if:

"(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child ***

(A) testifies at the proceeding." 725 ILCS 5/115—10(b) (West 1996).

A trial court has a considerable amount of discretion in determining the admissibility of hearsay statements, and the trial court's ruling will not be disturbed absent an abuse of discretion. *West*, 158 Ill. 2d at 164, 632 N.E.2d at 1009.

We note initially that the defendant did not object to the hearsay statements at the time of either Weaver's or Robbins' testimony. At

the close of the State's case, however, defendant made a "motion for directed verdict" and a "motion to strike" the investigator's testimony based upon a lack of sufficient safeguards of reliability as required by section 115—10 of the Code.

■ The determination of the reliability of hearsay statements is based upon the totality of the circumstances. Some factors in making that determination include the child's spontaneous and consistent repetition of the incident, the child's mental state, the use of terminology unexpected in a child of similar age, and the lack of a motive to fabricate. *West*, 158 Ill. 2d at 164, 632 N.E.2d at 1009.

■ Here, although the court had not conducted a hearing to determine the reliability of the hearsay statements before they were admitted into evidence, when defendant raised the issue of the lack of a hearing, the court permitted the parties to present argument as to whether the statements were shown to be reliable and to offer evidence on the subject. Defendant stated he had no evidence to present.

Following argument, the court noted (1) T.B.'s statements at the school were volunteered and (2) her statements gave the location of the incident and she described details of the assault that would be unexpected in a child of her age. Further, no evidence was presented that the child had a motive to fabricate.

We conclude that, under the circumstances, defendant cannot complain of being denied the protection of a separate section 115—10 hearing. As the trial was at bench, no problem of a jury being prejudiced by hearing inadmissible hearsay existed. The trial court did not abuse its discretion in denying defendant's motion to strike the investigator's testimony.

■ Defendant next argues the trial court abused its discretion in denying his motion for a new trial. In support of defendant's contention, defendant raises the same arguments raised previously. In deciding a motion for a new trial, the trial court's decision will not be disturbed on review absent an abuse of discretion. *People v. Thompson*, 125 Ill. App. 3d 665, 676, 466 N.E.2d 380, 388 (1984).

Based upon the arguments previously set forth, we conclude defendant failed to establish that the trial court abused its discretion in denying defendant's motion for a new trial.

■ Finally, defendant argues his sentence was excessive in light of the evidence. Defendant notes his previous criminal record consisted of possession of a controlled substance, a violation of probation, unlawful possession of drug paraphernalia, and possession of cannabis. He also notes he has been self-employed since high school. He presented the testimony of his sister and brother at the sentencing hearing stating that he was a hard worker and neither of them had ever seen him mistreat his children.

Defendant argues there was no evidence of "specific trauma" or injuries to T.B. as a result of the alleged sexual acts. He further argues he has not admitted the allegations. He contends there was no evidence in the record in aggravation and the sentence of 12 years' imprisonment was thus excessive.

Aggravated criminal sexual assault is a Class X felony (720 ILCS 5/12—14(d) (West 1996)) and carries a sentence of not less than 6 years' and not more than 30 years' imprisonment (730 ILCS 5/5—8—1(a)(3) (West 1996)). The sentence here was well within that range. Moreover, the trial court considered, as factors in aggravation, defendant's criminal history and the need to deter others. The trial court's decision with regard to sentencing is entitled to great deference. *People v. Coleman*, 166 Ill. 2d 247, 261-62, 652 N.E.2d 322, 329 (1995). Here, there was no showing that the trial court abused its discretion in sentencing.

Accordingly, for the reasons stated, we affirm.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE COOK, specially concurring:
When a witness testifies in a civil or criminal case, the character of that witness for truthfulness or untruthfulness is placed in issue. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 608.1 (6th ed. 1994). The general rule in Illinois is that proof of such character may be made solely by testimony as to general reputation and that opinion testimony is not permitted.

> "The current Illinois rule apparently rests upon the notion that opinion testimony is not sufficiently probative in light of its capacity to confuse and consume time and that introduction of opinion testimony might result in many trials becoming swearing contests between character witnesses. Why this should be true with regard to opinion but not with reputation is unclear." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 405.2, at 226 (6th ed. 1994).

Wigmore pointed out that the earlier practice permitted opinion and argued strongly for evidence based on personal knowledge and belief as contrasted with the " 'secondhand, irresponsible product of multiplied guesses and gossip which we term "reputation." ' " Fed. R. Evid. 405, Advisory Committee's Note (eff. July 1, 1973), 56 F.R.D. 183, 222, quoting 7 J. Wigmore, Evidence § 1986, at 167 (3d ed. 1940). The Federal Rules of Evidence permit proof by opinion testimony in

addition to reputation testimony. Fed. R. Evid. 405(a) (eff. July 1, 1975); 65 F.R.D. 131, 143; 28 U.S.C. app. Fed. R. Evid. 405(a) (1994).

Professor Graham notes that the Illinois practice of permitting a witness who testifies as to the reputation of another for truthfulness or untruthfulness to state whether he would believe such a witness under oath amounts to permitting the witness to give an opinion. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 405.2, at 227 (6th ed. 1994). Professor Graham states that the rule barring opinion testimony "is unduly restrictive," and that permitting character testimony in the form of opinion "deserves serious consideration." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 405.2, at 227 (6th ed. 1994). The reputation requirement allows a prosecution witness who would not believe another prosecution witness under oath to refuse to say so, simply by stating that he is unfamiliar with the witness' reputation. *Cf. People v. Bascomb,* 74 Ill. App. 3d 392, 395-96, 392 N.E.2d 1130, 1132-33 (1979) (not necessary for reputation witness to be able to testify that he heard reputation being discussed).

The all-important question, in a case where a defendant is charged with sexual assault upon a six-year-old child, is whether the child is telling the truth. No independent witness is in a better position to observe the child's character for truthfulness or untruthfulness than the child's teacher. The majority justifies the refusal to consider the testimony of the teacher in this case with the observation that that testimony was opinion testimony, not reputation testimony. The majority thereby elevates strict compliance with a questionable rule over the substantial rights of an accused.

It is true that in *West* the supreme court reiterated that the proper procedure for impeaching a witness' character for truthfulness is through the use of reputation evidence, not opinion evidence. In *West,* however, an objection was sustained to a single question, "has [the minor victim] ever exaggerated the truth to you before?" *West,* 158 Ill. 2d at 161, 632 N.E.2d at 1007. That question was asked of the defendant's sister and was clearly improper. *West* (158 Ill. 2d at 162, 632 N.E.2d at 1007) cited *People v. Williams,* 139 Ill. 2d 1, 21, 563 N.E.2d 431, 440 (1990). Although the court in *Williams* suggested that opinion testimony from two teachers that the 11-year-old victim was an "inveterate liar" was properly excluded, it is important to note that no attempt was ever made to introduce that testimony. *Williams,* 139 Ill. 2d at 20-21, 563 N.E.2d at 440. The issue in *Williams* was not whether the evidence was properly excluded, but whether counsel was ineffective for not attempting to introduce it.

Greenwood's testimony would certainly have been admissible in

an *in camera* hearing to determine whether the child was competent to testify. See 725 ILCS 5/115—14 (West 1996). Competency requires a minimum capacity to observe, record, recollect, and recount. Competency includes an understanding of the difference between the truth and a lie, and a willingness and ability to tell the truth. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 601.1, at 322 (6th ed. 1994). It is true that defense counsel did not request a competency hearing. However, when a case is tried to a judge, rather than a jury, a trial judge may determine a witness' competency either by preliminary inquiry or by observing the witness' demeanor and ability to testify during the trial. *People v. Campos*, 155 Ill. App. 3d 348, 357, 507 N.E.2d 1342, 1347 (1987). Defense counsel attempted to present the testimony of Greenwood to the trial court. Even if the trial court would not have allowed that testimony to go to a jury, the trial court should have considered the testimony in determining competency, a question that must be resolved by the court.

Although in my view the trial court committed error when it refused to consider Greenwood's testimony, I would nevertheless affirm. There was overwhelming evidence of the defendant's guilt, in the form of defendant's own admissions.